Tommy ROBINSON and Mark BOWMAN *v.* William E. BEAUMONT, Jr. and Jo GROCOCK

86-198 725 S.W.2d 839

Supreme Court of Arkansas
Opinion delivered March 16, 1987
[Rehearing denied April 13, 1987.]

*Barron & Coleman, P.A.*, by: *Randy Coleman*, for appellants.

*R. David Lewis*, for appellees.

JOHN I. PURTLE, Justice. On March 22, 1982, Pulaski County Sheriff Tommy Robinson and his deputy, Mark Bowman, arrested County Judge William E. Beaumont, Jr. and his assistant, Jo Grocock, and charged them with obstructing governmental operations in violation of Ark. Stat. Ann. § 41-2802 (Repl. 1977). The arrests were subsequently declared illegal in the state courts. The appellees filed suit for damages for violation of their civil rights as defined by 42 U.S.C. § 1983. Also, the appellees alleged violations of rights guaranteed to them pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

The appellants defended the allegations by general denial and additionally pled the defense of "good faith" or qualified immunity. A motion for summary judgment, based upon absolute or qualified immunity, was filed by the appellants. No ruling on the motion was made and the case continued to trial. The issues were submitted to the jury by interrogatories. The jury found in favor of the appellants on the question of punitive damages but

did not reach a verdict on compensatory damages. The trial court dismissed the complaints on punitive damages and declared a mistrial on compensatory damages. The present appellees appealed and this Court reversed and remanded for a new trial on the issue of liability of the appellants. *See Beaumont* v. *Robinson*, 282 Ark. 181, 668 S.W.2d 514 (1984).

Upon remand the present appellants again moved for summary judgment based upon the defense of "good faith" or qualified immunity. The trial court denied the motion. The present appeal is from the refusal of the trial court to grant the motion for summary judgment. The arguments for reversal are that the trial court erred in holding that appellants were not entitled to a dismissal based upon the ground of qualified immunity and that the law of the case doctrine did not require the trial court to deny the motion for summary judgment. We hold that the law of the case doctrine on this point is inapplicable. We remanded the case for a new trial on appellants' liability. In determining the issue of liability it would have been necessary and proper for the trial court to determine the issue of "good faith" immunity as claimed by the appellants. For reasons stated below, we hold that under the facts of this case, as developed at this stage of the proceedings, the qualified immunity defense does not protect the appellants from liability from suit.

The underlying basis of the arrests was that appellees refused to immediately process a purchase requisition. The appellants alleged that such refusal violated the provisions of Ark. Stat. Ann. § 41-2802, which establishes the offense of obstructing governmental operations. At the time of the arrest the parties were under a restraining order that had been issued by a federal court. This order prohibited the issuance of purchase requisitions relating to the jail funds without the prior approval of a special master appointed by the federal court. One of the duties of the appellees was to issue purchase requisitions. Beaumont offered to obtain judicial approval for the requested requisitions, but the appellants demanded the requisition immediately, without prior approval of the special master. The federal court subsequently held Robinson in contempt of court and sent him to jail for violating the federal court order.

The amended complaint in the present case alleges that

Sheriff Tommy Robinson and Deputy Bowman came to appellees' office on March 22, 1982, and demanded a purchase requisition without approval of the special master. Despite Judge Beaumont's offer to obtain the permission of the master, the appellants continued to demand immediate disbursement. The complaint further alleged that Sheriff Tommy Robinson unlawfully:

> [t]hrough force and abusive conduct, did attack and deny basic human freedoms to two law-abiding government officials, because they chose obedience to law rather than concession to the unlawful course Tommy Robinson dictated, were physically maltreated, paraded in handcuffs and exposed to public ridicule and humiliation, damaged in their reputations and subjected to outrageous and indefensible conduct. . . .

In addition, the complaint specifically alleged a right of recovery based upon 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. The complaint further stated that the appellants deprived the appellees "of life, liberty, and property without due process of law."

Generally a denial of a motion for a summary judgment is a nonappealable order. *Jaggers* v. *Zolliecoffer*, 290 Ark. 250, 718 S.W.2d 441 (1986). (*Jaggers* defense was based upon statutory immunity from liability.) However, the general rule does not apply in this case. Arkansas Rules of Appellate Procedure, Rule 2(a)(2) states:

> (a) an appeal may be taken from a circuit, chancery, or probate court to the Arkansas Supreme Court from . . .
>
> (2) an order which in effect determines the action and prevents a judgment from which an appeal may be taken or discontinues the action . . ."

The principle defense was that the appellants were entitled to a "good faith" or qualified immunity from suit. There would be no further proceedings if the appellants were entitled to the claimed immunity. The refusal to grant the motion amounted to a denial of appellants' claimed defense which would have, if allowed, discontinued the action. The qualified immunity claim is a claim of right which is separable from, and collateral to, rights asserted

in the complaint. *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. at 546 (1948). The refusal to grant this summary judgment motion had the effect of determining that the appellants were not entitled to immunity from suit. The right of qualified immunity from suit is effectively lost if a case is permitted to go to trial. *Mitchell* v. *Forsyth*, 472 U.S. 511 (1985).

 Our procedural rules are patterned after the federal rules; therefore, we look with persuasion upon how the federal courts have interpreted their corresponding rules. In *Harlow* v. *Fitzgerald*, 457 U.S. 800 (1982), the Court held that:

> [G]overment officials performing discretionary functions generally are shielded from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Supra at page 817.

The above portion of the *Harlow* opinion relates to liability from civil damages rather than immunity from suit. The opinion further states:

> [W]e have held that qualified immunity would be defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention of deprivation of constitutional rights or other injury. . . .' Supra at page 817.

Historically the courts have held that certain government officials are entitled to immunity from suit or damages. The purpose of granting immunity is to shield these government officials from unjustified interference with the performance of their duties and to protect them from the constant strain of potential threats of liability. *Nixon* v. *Fitzgerald*, 457 U.S. 731 (1982).

 Immunity may be either "absolute" or "qualified." Absolute immunity is granted to officials whose particular function or constitutional status requires complete protection from suit. It is generally applicable to legislators performing duties required of them, judges acting in their judicial functions,

and certain officials of the executive branch. *Harlow, supra.* Absolute immunity has been extended to officers engaged in federal executive and adjudicative functions and to the President of the United States. *Fitzgerald, supra.* The considerations of separation of power granting absolute immunity to state and federal legislators and the President of the United States do not require absolute immunity for Cabinet Officers or the Attorney General. *Mitchell, supra.* The United States Supreme Court has stated that "qualified immunity, is the norm." *Schurer* v. *Rhodes*, 416 U.S. 232 (1974). It has been held, for example, that a governor and his staff receive only "qualified or good faith immunity." *Schurer* v. *Rhodes, supra.* The purpose of granting qualified immunity or "good faith" immunity is an attempt to balance competing interests between the need to protect officials in the exercise of their discretion and the rights of citizens. *Butz* v. *Economou*, 438 U.S. 478 (1978).

The defense relied upon in the present case was primarily that of qualified immunity. The law of qualified immunity has recently been reshaped in *Harlow* and restated in *Mitchell.* The *Mitchell* case states:

> [T]his Court purged qualified immunity doctrine of its subjective components and held that 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'
>
> . . .
>
> Qualified immunity, similar to absolute immunity, is an entitlement not to stand trial under certain circumstances. Such entitlement is an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of the denial of absolute immunity indicates that the denial of qualified immunity should be similarly appealable under the "collateral order" doctrine; in each case, the district court's decision is effectively unreviewable on appeal from a final judgment. The denial

of qualified immunity also meets the additional criteria for an appealable interlocutory order: it conclusively determines the disputed question; and it involves a claim of rights separable from, and collateral to, rights asserted in the action.

The *Mitchell* court went on to hold that the Attorney General of the United States was not entitled to absolute immunity but was entitled to qualified immunity. This immunity is guaranteed so long as the actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." The *Harlow* court reshaped the doctrine of qualified immunity in a manner so as to allow the federal trial courts to resolve many claims by way of summary judgment. It is generally a question of law whether the conduct of the plaintiff violated clearly established law. In reaching its decision the *Mitchell* court took into consideration the results of subjecting government officials to either the costs of a trial or the burdens of broad-reaching discovery. The official is entitled to not stand trial or face the burdens of litigation conditioned upon the resolution of the legal question concerning whether the conduct complained about violated clearly established statutory or constitutional law. Therefore, if the trial court is unable to determine the issue as a matter of law, the official is not entitled to immunity from suit.

Officials acting within the sphere of their office are ordinarily entitled to the robe of shelter afforded by the qualified immunity doctrine. However, there is a prerequisite to such defense. The questioned activity must not be in violation of clearly established law which a reasonable person would have known. This condition does not leave officials to the mercy of litigants with frivolous or vexatious claims because such claims will be dismissed without the expense of depositions or other litigation costs. If a complaint states a cause of action which penetrates the shield of qualified immunity, it should not be summarily dismissed. If it fails to state such a cause, the official is entitled to immunity from proceeding to trial.

The Fourth Amendment to the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and

seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly, describing the place to be searched, and the person or things to be seized.

The Arkansas Constitution makes similar provisions in Article 2, Section 8. Without citation of additional authority we hold that the right not to be arrested without probable cause was clearly established by law at the time of arrests. This issue was properly before the trial court and was not summarily disposable in view of the allegations of the complaint.

 There is no longer a subjective and objective test used to determine when qualified immunity is a valid defense. The standard now used to determine whether an official is entitled to the protection of qualified immunity is stated in *Harlow* as follows:

[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Therefore, *Harlow* holds if the law or right which the official is alleged to have violated was clearly established at the time of the alleged violation and a reasonable person would have known about it the official is not immune from suit or liability. Until this threshold question of immunity is resolved, the official should not be put to additional costs of litigation. If the trial court determines that the law or right was clearly established the immunity should fail, since a reasonably competent public official should know the law governing his conduct. However, if the official is subsequently able to prove that he neither knew, nor should have known, of the clearly established standard, the defense should be sustained. The required proof would be based primarily upon objective factors.

 The standard relating to the defense of qualified

immunity was further refined in *Mitchell* where the procedural aspects surrounding this defense were considered. If the complaint fails to state a claim of violation of clearly established law the defense of qualified immunity is appropriate and the suit should not be allowed to proceed. On the other hand, if the complaint alleges violation of a clearly established law, the suit should continue. Should discovery fail to uncover evidence supporting the alleged violation sufficient to create a genuine issue of fact, the defendant is entitled to summary judgment. If discovery tends to support the allegations in the complaint or fails to disprove them, the matter must be resolved by the trier of fact.

If the allegations in the present complaint are taken as true, the appellants would have been expected to know that their conduct violated clearly established statutory or constitutional rights. At this stage of the proceedings we cannot say that the trial court erred in refusing to grant summary judgment in favor of the appellants. Under these circumstances the case must be remanded to the trial court for determination of factual issues relating to liability and compensatory and punitive damages.

The appellees argue on cross-appeal that the trial court should have granted a summary judgment in their favor on the issue of liability. In so arguing they rely upon *Mitchell* and *Harlow*. We do not agree with this interpretation. We revert to our general rule that failure to grant a summary judgment is not an appealable order. In this case the refusal to grant the appellees' request for summary judgment did not determine the issue or prevent a judgment from which an appeal may be taken.

Affirmed and remanded.

HICKMAN, J., concurs in part and dissents in part.

GLAZE, J., concurs.

DARRELL HICKMAN, Justice, concurring in part and dissenting in part. In my judgment the majority opinion misses the mark. I agree the order denying summary judgment should be subject to appeal; thereafter, I disagree with the opinion.

The trial judge denied summary judgment for the wrong reasons. The appellants are entitled to a judgment before trial as to whether they are immune from suit. *Mitchell* v. *Forsyth*, 472

U.S. 511 (1985). In consideration of that judgment, the question is: did the appellants' conduct violate clearly established statutory or constitutional rights? The appellants arrested the appellees without a warrant. As every peace officer knows, a person can be arrested for a felony without a warrant if there is ". . . reasonable cause to believe such person has committed . . . a felony." A.R.Cr.P. Rule 4.1. That means the appellants did not violate statutory or constitutional standards unless reasonable cause did not exist. That is the question the trial court should address, before trial; in this case through a motion for summary judgment. If the facts are virtually undisputed, he should rule. If not, it goes to the jury. We do not have a decision on the question, and the trial should not proceed until it is decided on the proper basis.