Jeffrey L. BALDRIDGE *v.* Jana CORDES,
Arkansas State Police

02-66 85 S.W.3d 511

Supreme Court of Arkansas
Opinion delivered September 26, 2002

*Cindy M. Baker*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jill Jones Moore*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. Appellant Jeffrey Baldridge filed a civil-rights suit in the Carroll County Circuit Court against Appellee Jana Cordes, an Arkansas State Trooper. The suit stems from Baldridge's arrest for driving while intoxicated, no liability insurance, and careless and imprudent driving. The trial court granted summary judgment to Cordes, and Baldridge appealed. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(8) and (b)(5), as it presents

issues needing clarification or development of the law. We find no error and affirm.

On August 9, 2000, Baldridge, and another individual were riding horses along the right-of-way US Highway 62 in eastern Carroll County. The horse Baldridge was riding became frightened, and shied onto Highway 62, where a car hit the animal with the mirror of the automobile. The accident occurred after dark. At the scene, Arkansas State Trooper Cordes determined that Baldridge was intoxicated given her perception that he smelled of intoxicants, his eyes were bloodshot, his speech was slurred, he was loud, and he appeared unsteady on his feet.

Baldridge was arrested and taken to the Carroll County Sheriffs's Office where Trooper Cordes provided Baldridge with a statement of rights regarding a breathalyzer, and the penalties for refusing the breathalyzer. Baldridge submitted to two breathalyzer tests, one of which showed that Baldridge's blood alcohol content was .007, and another of .008. There were no field sobriety tests given, and no other blood alcohol tests given. Baldridge was acquitted of all charges by the municipal court.

On October 17, 2000, Baldridge filed a complaint in the Carroll County Circuit Court alleging that Jana L. Cordes, Arkansas State Police, in her individual capacity, had violated his Federal Constitutional rights and his State Constitutional rights, and also stated a claim for defamation of his character.

Cordes filed a motion for summary judgment based on the belief that her actions were covered by immunity. Despite Baldridge's request, no hearings were held on the motions, and the trial court entered summary judgment in favor of Cordes, on grounds that Cordes was entitled to qualified immunity from suit, and that the facts stated in the Baldridge complaint were insufficient to overcome her immunity. We agree, and affirm.

### Summary Judgment

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is enti-

tled to judgment as a matter of law. *Bond v. Lavaca School District*, 347 Ark. 300, 64 S.W.3d 249 (2001); *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001); *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998), supp. opinion on denial of reh'g, 332 Ark. 189, 961 S.W.2d 712 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Bond, supra.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

### Qualified Immunity

■ ■ A motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Smithson v. Aldrich*, 235 F.3d 1058 (8th Cir. 2000). As applied by this court, the doctrine of qualified immunity is akin to its federal counterpart. *Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999). Thus, an official is immune from suit if his actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Virden v. Roper*, 302 Ark. 125, 788 S.W.2d 470 (1990); *Flentje v. First National Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Rudd v. Pulaski County Special School District*, 341 Ark. 794, 20 S.W.3d 310 (2000) (qualified immunity under Arkansas law rests on the same scope and principles as under federal law.)

■ Arkansas Code Annotated § 19-10-305 (Supp. 1999) provides in pertinent part: "Officers and employees of the State of Arkansas are immune from liability from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." This

court has interpreted that section to mean that state officers and employees acting without malice and within the course and scope of their employment are immune from an award of damages in litigation. *Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999); *Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998); *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997). This court has recognized that the immunity provided by section 19-10-305 is similar to that provided by the Supreme Court for federal civil-rights claims. *Robinson v. Langdon*, 333 Ark. 662, 970 S.W.2d 292 (1998).

■ A court deciding the issue of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Pace v. City of Des Moines*, 201 F.3d 1050 (2000); *Conn v. Gabbert*, 526 U.S. 286 (1999).

■ ■ The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right. *Dunaway v. New York*, 442 U.S. 200 (1979); *Robinson et. al. v. Beaumont et. al.*, 291 Ark. 477, 725 S.W.2d 839 (1987). An arresting officer is entitled to qualified immunity if the arrest was objectively reasonable, and officers of reasonable competence could disagree on whether the probable-cause test was met. *Malley v. Biggs*, 475 U.S. 341 (1986). If the complaint alleges violation of a clearly established law, the suit should continue. *Robinson, supra.*

Baldridge asserts an unlawful arrest, unlawful search and seizure (breathalyzer), unlawful detainment (seizure of the individual without probable cause), deprivation of liberty and property (arrest without probable cause), all of which are allegations of violations of constitutional rights that were clearly established at the time of the actions complained of occurred. Baldridge also argues to this court that once a genuine issue of material fact is found to exist, the defense of qualified immunity shielding the defendant from trial must be denied.

■ ■ Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [a police

officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested committed the crime with which he was charged. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). As this standard makes clear, there need not be actual probable cause for an officer to be shielded by qualified immunity; an objectively reasonable belief that there was probable cause is enough. *Pace, supra; Thompson v. Reuting*, 968 F.2d 756 (8th Cir. 1992).

In *Walden v. Carmack*, the Eighth Circuit stated, "A defendant need not show that there was only one reasonable conclusion . . . on whether probable cause existed, but rather, a court should ask whether the . . . officials acted reasonably under settled law in the circumstances then existing, not whether another reasonable, or more reasonable interpretation of the facts can be constructed years later." 156 F.3d 861 (8th Cir. 1998). If there is a reasonable basis to conclude that probable cause existed, qualified immunity shields the officer from suit, and courts must take caution not to simply judge the officer's actions with the benefit of 20/20 hindsight. *Tauke v. Stine*, 120 F.3d 1363 (8th Cir. 1997).

Of course, the burden remains on the proponent of the immunity to establish the relevant predicate facts, and at the summary-judgment stage the nonmoving party is given the benefit of all reasonable inferences. *Pace, supra; Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993). In the event that a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground. *Pace, supra; Lambert*, 187 F.3d at 935. What must be kept in mind, however, is that once the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a "genuine issue of fact" as to whether an officer "should have known" that his conduct violated constitutional rights. *Pace, supra*. The conduct was either reasonable under settled law in the circumstances, or it was not, and this is a determination of law that should be made at the earliest possible stage in litigation. *Pace, supra*. Whether an officer acted reasonably under settled law in the circumstances is a question of law, and not itself a predicate fact. *Pace, supra*. "Predicate facts" include only the relevant circumstances and the acts of the parties themselves, and

not the conclusions of others about the reasonableness of those actions. *Pace, supra.*

 Baldridge's opinion, or even those of other officers, that no reasonable or competent officer could have reached such a conclusion, does not bear upon the qualified-immunity analysis, for it is a purely legal inquiry where the court does not engage in opinion polling to determine objective reasonableness. The objective reasonable-person standard utilized in the qualified-immunity analysis ignores the factual opinions of others because it is a legal inquiry, *Siegert v. Gilley*, 500 U.S. 226 (1991).

Arkansas Code Annotated 5-65-103 states:

*5-65-103. Unlawful acts.*

(a) It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

(b) It is unlawful and punishable as provided in this act for any person to operate or be in actual physical control of a motor vehicle if at that time the alcohol concentration in the person breath or blood was eight-hundredths (0.08) or more based upon the definition of breath, blood, and urine concentration in § 5-64-204.

Ark. Code Ann. § 5-65-103 (Repl. 1997). Arkansas Code Annotated further states:

*5-65-107. Persons arrested to be tried on charges — No charges reduced — Filing citations.*

(a) Persons arrested violating § 5-65-103 shall be tried on those charges or plead to such charges, and no such charges shall be reduced.

(b) Furthermore, when a law enforcement officer issues a citation for violating § 5-65-103, the citation shall be filed with the court as soon as possible.

Ark. Code Ann. § 5-65-107 (Repl. 1997). Therefore, persons arrested violating the Arkansas DWI law shall be tried on those charges or plead to such charges, and no such charges shall be reduced. Consequently, Baldridge was required under Arkansas

law to be tried for driving while intoxicated, because he was arrested on those charges.

However, given Cordes's perception of Baldridge at the scene of the accident, she had probable cause to arrest him for drinking in public. According to Arkansas Code Annotated:

*5-71-212. Public intoxication — Drinking in public.*

(a) A person commits the offense of public intoxication if he appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under circumstances such that he is likely to endanger himself or other persons or property, or that he unreasonably annoys persons in his vicinity.

Ark. Code Ann. § 5-71-212 (Repl. 1997). There is no competent evidence before this court that rebuts Cordes's perception of Baldridge's sobriety. Cordes determined that Baldridge was intoxicated given her perception that he smelled of intoxicants, his eyes were bloodshot, his speech was slurred, he was loud, and he appeared unsteady on his feet. Given this behavior, Cordes arrested Baldridge and had a duty to remove Baldridge from the highway.

▇▇ ▇▇ The Eighth Circuit Court of Appeals has held that "where a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense." *United States v. Rambo,* 789 F.2d 1289, 1294 (8th Cir. 1986); *United States v. Prouse,* 945 F.2d 1017 (8th Cir. 1991). It is undisputed that Baldridge was on the highway after dark when he was involved in an accident with a car. Further, given Baldridge's behavior and physical demeanor at the scene, Cordes had probable cause to arrest Baldridge for public intoxication. Further, once probable cause is established for the arrest of the accused on one offense, it then becomes irrelevant whether probable cause existed for other offenses for which the accused was charged. *Linn v. Garcia,* 531 F.2d 855 (8th Cir. 1976). So long as Cordes had probable cause to arrest Baldridge for DWI or public intoxication, the fact that he was also cited for other violations becomes immaterial.

■ After arresting Baldridge on DWI charges, Cordes attempted to remedy her error by amending the charge to drinking in public in violation of Ark. Code Ann. § 5-71-212 (Repl. 1997). Baldridge was served with a letter stating that Cordes was "amending the charges." However, Cordes did not have the authority to amend the driving-while-intoxicated charge once Baldridge had been arrested under Ark. Code Ann. § 5-65-107.

■ However, Cordes is still entitled to qualified immunity. As an Arkansas State Trooper, Cordes had the right and duty to remove Baldridge from the highway after Baldridge was involved in an accident. Cordes did arrest Baldridge under the wrong citation, but she attempted to amend the charges once this was realized. Cordes does not lose her immunity because the charges could not be amended under Arkansas law.

Affirmed.

CORBIN, BROWN, and THORNTON, JJ., concur.

GLAZE, J., dissents.

ROBERT L. BROWN, Justice, concurring. I have a hard time holding, as the majority does, that police officers of reasonable competence would disagree on the issue of whether *riding horseback* while intoxicated constitutes *driving* while intoxicated. Clearly, riding horseback is not driving a motor vehicle. Nevertheless, by her arrest, Trooper Cordes did remove a person who had been drinking and who was on Highway 62 from that highway. This was certainly in the public interest. For that reason, I conclude that in arresting Jeffrey Baldridge, she was not plainly incompetent.

The United States Supreme Court has set the federal standard for qualified immunity:

> As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question. Under the *Harlow* [*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)] standard, on the other hand, an allegation of malice is not sufficient to

defeat immunity if the defendant acted in an objectively reasonable manner. The *Harlow* standard is specifically designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," and we believe it sufficiently serves this goal. Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley v. Briggs*, 475 U.S. 335, 341 (1986). I am more comfortable in this case using the test of "plainly incompetent" rather than "objective reasonableness."

Having concluded that Trooper Cordes is entitled to qualified immunity for the federal claim, I question the majority's analysis of the state civil rights claim. The pertinent state statute granting qualified immunity under state law reads:

> (a) Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Ark. Code Ann. § 19-10-305(a) (Supp. 1999). We do not know from the majority opinion whether Trooper Cordes was covered by liability insurance and, if not, whether Baldridge alleged malice on the part of the trooper in his complaint. My reading of Baldridge's complaint is that malice was not alleged. Because of this, I conclude that Trooper Cordes is also entitled to qualified immunity for the state claim.

I concur in the result reached by the majority.

CORBIN and THORNTON, JJ., join.

TOM GLAZE, Justice, dissenting. The facts are not disputed. On August 9, 2000, Officer Jana Cordes arrested Jeffrey Baldridge for driving a motor vehicle while intoxicated, careless driving of a vehicle, and having no proof of insurance to operate a motor vehicle. Cordes charged Baldridge with these traffic offenses as a result of Baldridge's riding a horse alongside Highway 62 in Carroll County when his horse saw something

causing it to shy onto the road and hit the mirror of a car traveling on the highway.

Cordes had Baldridge submit to two breathalyzer tests that showed Baldridge's alcohol content to be .007 and .008, well under the .08 limit for a person operating a motor vehicle. Cordes did not administer a field sobriety test at the scene of the accident. The Berryville Municipal Court dismissed the charges against Baldridge, because the violations involved a horse, which the court found was not a motor vehicle as contemplated by Arkansas's laws.

During the pendency of Baldridge's traffic offense charges, Baldridge filed suit against Cordes, alleging the violation of his rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. Cordes responded, stating she was immune from suit except to the extent she was covered by insurance and she was protected under qualified immunity under federal law. The circuit court ruled in Cordes's favor, granting her request for summary judgment and finding Cordes had sufficient reason and probable cause to arrest Baldridge for the offense of driving a motor vehicle while intoxicated. Baldridge appeals that decision, and this court affirms the circuit court. As hard as I try, I am simply unable to understand how anyone — much less a state police officer — can reasonably believe a horse can be characterized as a motor vehicle under Arkansas law. Therefore, I respectfully dissent.

It is well settled that law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Anderson v. Creighton*, 483 U.S. 635 (1987). Government officials are qualifiedly immune from liability in civil actions to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986). Thus, if an officer acts in a manner about which officers of reasonable competence would disagree, the officer should be immune from liability. Accordingly, in Sec-

tion 1983 cases involving charges of improper arrest, we have held that "the issue for immunity purposes is not probable cause in fact but arguable probable cause." *Myers v. City of Morris*, 810 F.2d 1437 (8th Cir. 1987); *see also Habiger v. City of Fargo*, 80 F.3d 289 (8th Cir. 1996); *Johnson v. Schneiderheinz*, 102 F.3d 340 (8th Cir. 1996).

The Eighth Circuit, in *Pace v. City of Des Moines*, 201 F.3d 1050 (2000), recently held that a plaintiff can defeat a motion for summary judgment on the grounds of a qualified-immunity defense if the following three elements are present: 1) if the plaintiff has alleged a deprivation of an actual constitutional right; 2) if the right was clearly established at the time of the alleged violation; and 3) a genuine issue of fact as to whether the officer would have known that his/her alleged conduct would have violated plaintiff's rights.

In the case at bar, Baldridge alleged several deprivations of his Fourth Amendment rights, i.e., Trooper Cordes's actions of stopping Baldridge, detaining him to issue the citation, arresting him, requiring him to submit to the breathalyzer, and requiring him to attend court. The right not to be arrested or prosecuted without probable cause is a clearly established constitutional right. *Dunaway v. New York*, 442 U.S. 200 (1979); *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested committed the crime with which he was charged. *Beck v. Ohio*, 379 U.S. 89 (1964). There need not be actual probable cause for an officer to be shielded by qualified immunity; an objectively reasonable belief that there was probable cause is enough. *Hunter v. Bryant*, 502 U.S. 224 (1991).

The *Pace* court stated that courts deciding questions of qualified immunity must also recognize "that whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law." *Pace* further states the following:

> What must be kept in mind, however, is that once the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a "genuine issue of fact" as to whether an officer "should have known" that his conduct violated constitutional rights. The conduct was either "reasonabl[e] under settled law in the circumstances," *Hunter*, 502 U.S. at 228, 112 S. Ct. at 537, or it was not, and this is a determination of law that should be made at the earliest possible stage of litigation.

*Pace*, 201 F.3d at 1056. Also, "predicate facts" include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions. When there is no dispute among the parties as to the relevant facts, a court should always be able to determine as a matter of law whether or not an officer is eligible for qualified immunity — that is, whether or not the officer acted reasonably under settled law given the particular set of facts.

The relevant facts in this case are that Baldridge was arrested and charged with three motor vehicle traffic violations while riding a horse. The issue boils down to whether it was reasonable for Trooper Cordes to believe that Baldridge had committed the offenses with which she charged him. As previously mentioned, Baldridge was charged with DWI, a violation of Ark. Code Ann. § 5-65-103. Section 5-65-103(a) provides, "It is *unlawful* and punishable as provided in this act *for any person who is intoxicated to operate* or be in actual physical control of *a motor vehicle*." (Emphasis added.) In *Fitch v. State*, 313 Ark. 122, 853 S.W.2d 874 (1993), this court looked at the issue as a matter of first impression when a man was charged with DWI while operating an all-terrain vehicle. The *Fitch* court concluded that "a motor vehicle is generally defined as a self-propelled *wheeled conveyance* that does not run on rails." American Heritage Dictionary, 817 (2d Ed. 1982). Under the Transportation Title chapter on Registration and Licensing, Ark. Code Ann. § 27-14-207(b) (Supp. 1991) defines the term "motor vehicle" as follows: "'Motor Vehicle' means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." The term "motor vehicle" is defined the same throughout the various chapters of the Transportation Title, e.g., see §§ 27-16-207(b), 27-19-206, and 27-49-219(b) (1987).

In sum, in my view, Baldridge may have violated some law because he was riding a horse alongside a highway, but I suggest that Cordes was not reasonable or acting competently when she charged Baldridge with a motor-vehicle offense. The most she could have charged Baldridge with was public intoxication, and even with that charge, the facts are very much in question.