CITY of FARMINGTON; Sam Holcomb, Individually, and In His Official Capacity as Chief of Police of the City of Farmington; Wayne Prince, Individually, and In His Official Capacity as Police Sergeant of the City of Farmington; John Harris, Individually, and In His Official Capacity as Mayor of the City of Farmington *v.* Laura SMITH, Individually, and as Parent of Courtney Hill and Clifton Hill, Her Minor Children; and Jared Hill and Vincent Hill, Individually, Her Adult Sons

05-1208                                                   237 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered June 1, 2006

[Rehearing denied September 7, 2006.*]

---

* GLAZE, J., would grant rehearing.

*Arkansas Municipal League*, by: *J. Denham*, for appellants.

*Robert A. Ginnaven III* and *Janet P. Gallman*, for appellees.

DONALD L. CORBIN, Justice. Appellants City of Farmington, its Chief of Police, Sam Holcomb, its Mayor, John Harris, and Farmington Police Sergeant, Wayne Prince, appeal an order of the Washington County Circuit Court denying their motion for summary judgment. Appellants raise several arguments on appeal but the only argument that may be properly considered in the context of this interlocutory appeal is whether the trial court erred in determining that Appellants were not entitled to qualified immunity. This court assumed jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2(b)(3), as involving a constitutional issue. We affirm.

On January 7, 2005, a Subway restaurant in Farmington was robbed by two men. Law enforcement officers in the area were put on notice of the robbery and were told that the suspects were white males, between the ages of seventeen and twenty, wearing blue bandannas on their faces, flannel jackets, and blue jeans. One of the suspects was armed with a gun. Chief Holcomb reported that people "had seen 2 young people leave the side door of the Subway and go along the road that runs beside the Subway that leads to the old cemetery."

On this same day, Appellee Laura Smith's son, Vincent Hill, left school shortly after 3:00 p.m., and began driving toward Rheas Mill Road, heading east to Highway 62. Vincent then saw his younger brother, Clifton Hill, walking along the side of the road with a friend, Zack. Vincent offered to give the boys a ride and subsequently dropped them off at Zack's home. After Vincent dropped the two younger boys off, he went through the drive-thru window of a nearby McDonald's. As he was about to exit the parking lot, Vincent noticed a Fayetteville police car turn on its blue lights behind him. Vincent pulled over, and two Fayetteville police officers approached him and began to question him about the robbery at Subway. One of the officers told Vincent that his brother and Zack matched the description of the suspects who had

robbed the restaurant. During this questioning, Chief Holcomb arrived on the scene. The officers then instructed Vincent to drive to his house while they followed him.

Once at the home, several officers, including Sergeant Prince who was armed with a shotgun, approached the Smith house and "banged on the door." Smith, who initially was asleep, was in the house with her two other children, Jared Hill and Courtney Hill, as well as Clifton and Zack. Jared opened the door, and Sergeant Prince, while holding his shotgun, asked if Clifton and his friend were at home. Jared stated that they were, and Prince requested that he go get the two boys. As Jared started to close the door, one of the officers told him to leave it open and then asked him if the officers could come inside the house. Courtney, who was sitting on the couch when the officers entered the home, heard Jared ask Sergeant Prince why he had a shotgun, to which Prince replied, "Go get your little brother and get everyone out of the house there has been an armed robbery."

Sergeant Prince then confronted Clifton and Zack and told them that there had been an armed robbery at Subway and that they had been spotted at the scene of the robbery. While this was going on, Laura awoke and confronted Sergeant Prince, who at the time was her superior officer at the Farmington Police Department, as to why he and the other officers were in her home. She followed Chief Holcomb, then her boss, and a Washington County deputy sheriff into Clifton's bedroom while they searched the room.

On January 11, 2005, Laura filed a written complaint regarding the conduct of Chief Holcomb and Sergeant Prince with Alderman Teresa Clark, a member of the Farmington City Council. Alderman Clark prepared a memorandum and submitted it and Laura's complaint to Mayor Harris, the other aldermen, the city attorney, and the city business manager. Laura then met with Mayor Harris on January 27, 2005. At the conclusion of the meeting, she was terminated from her job with the Farmington Police Department. Laura requested a written explanation for her termination, and on February 16, 2005, City Attorney Steven Tennant, drafted a letter stating that she was terminated because of insubordination.

Appellees filed suit against Appellants, alleging among other things, violations of the Arkansas Civil Rights Act of 1993, codified at Ark. Code Ann. §§ 16-123-101–108 (Supp. 2003); the

Arkansas Whistle-Blower Act, codified at Ark. Code Ann. §§ 21-1-601–609 (Repl. 2004); violations of the Fourth and Fifth Amendments to the United States Constitution; as well as several state-law claims. In the complaint, Laura alleged that she was entitled to reinstatement of her job and back pay. She further alleged that she and her children were entitled to damages as a result of Chief Holcomb's and Sergeant Prince's unlawful and malicious conduct.

Appellants filed an answer, denying Appellees' allegations and pleading affirmatively that they were entitled to good-faith and qualified immunity. They also averred that Appellees had failed to exhaust their administrative remedies. Thereafter, Appellants filed a motion for summary judgment, arguing that there were no material issues of fact in dispute. In their brief in support of their motion, Appellants argued that summary judgment was warranted because Appellees failed to exhaust their administrative remedies and because Appellants did not violate any of Appellees' civil or constitutional rights. In addition, Appellants argued that they were entitled to qualified immunity. In support of this claim, they argued that Appellees failed to establish a constitutional violation, and further argued that even if a violation had occurred, Appellees could not prove that Appellants knew that their actions were violative of a clearly established law.

The trial court entered a written order on August 16, 2005, denying Appellants' motion for summary judgment.[1] In so ruling, the trial court found that there were material questions of fact remaining and also determined that, as a matter of law, no reasonable official could have thought the conduct engaged in by Appellants was reasonable. From that order, comes the instant appeal.

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005); *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet

---

[1] The trial court granted Appellants' motion for summary judgment on Appellees' claim of a violation of the Fifth Amendment because of Appellants' failure to advise Appellees of their *Miranda* rights. This claim is not a subject of the instant appeal.

proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

Appellants argue that Appellees have failed to establish that they were guilty of any constitutional violation, but further argue that in any event the only element of qualified immunity that would be at issue is whether they knew their actions violated any clearly established laws. Appellees counter that the only issue that this court may properly address at this time is whether Appellants are entitled to qualified immunity. Appellees further aver that fact-based qualified-immunity decisions are not appropriate for appellate review.

We begin our analysis by noting our agreement with Appellees that any review of qualified immunity undertaken by this court at this time is limited to the question of whether Appellants are entitled to immunity from the present suit. We will not reach the merits of the numerous arguments raised by Appellants that would require this court to engage in a fact-based inquiry of whether the trial court erred in denying summary judgment.

Ark. Code Ann. § 21-9-301 (Repl. 2004), provides in pertinent part:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
>
> (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

The determination of whether an official is entitled to claim immunity from suit is purely a question of law. *Smith*, 363 Ark. 126, 211 S.W.3d 485; *Helena-West Helena Sch. Dist. v. Monday*, 361 Ark. 82, 204 S.W.3d 514 (2005).

The instant action is one against the city, its mayor, its chief of police, and a police sergeant. In their complaint, Appellees allege that the three named parties are liable both in their official capacities and individually. This court has recognized that a suit against a city's official in his or her official capacity is not a suit against that person, but rather a suit against that official's office. *See Smith*, 363 Ark. 126, 211 S.W.3d 485; *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002). Under section 21-9-301, the city and its employees enjoy immunity from liability and from suits for damages except to the extent that the city is covered by liability insurance, or acts as a self-insured for certain amounts as provided by statute. *Id.*; *see also Carlew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004); *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002). Additionally, we have consistently held that section 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts. *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992); *see also West Memphis Sch. Dist. No. 4 v. Circuit Court of Crittenden County*, 316 Ark. 290, 871 S.W.2d 368 (1994).

Our interpretation of section 21-9-301 must begin with the analysis this court has used in interpreting the counterpart qualified-immunity statute that applies to state employees, codified at Ark. Code Ann. § 19-10-305 (Supp. 2003). Section 19-10-305 provides state employees with qualified immunity from civil liability for non-malicious acts occurring within the course of their employment. *See Smith*, 363 Ark. 126, 211 S.W.3d 485; *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). In interpreting section 19-10-305, we have traditionally been guided by the analysis adopted by the United States Supreme Court for qualified-immunity claims in federal civil-rights actions. *Fegans*, 351 Ark. 200, 89 S.W.3d 919.

In *Smith*, 363 Ark. 126, 211 S.W.3d 485, this court explained:

> Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Fegans v. Norris, supra* (citing *Baldridge v. Cordes*, 350 Ark. 114, 120-21, 85 S.W.3d 511, 514-15 (2002)). An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would

have knowledge. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry. *Baldridge v. Cordes, supra.*

The inquiry outlined above is a restatement of the standard used by this court to evaluate motions for summary judgment on the ground of qualified immunity. *See Baldridge v. Cordes, supra* (citing *Pace v. City of Des Moines*, 201 F.3d 1050 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has emphasized, however, that such a restatement of the standard is incomplete: "Courts deciding questions of qualified immunity must also recognize that 'whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law.' " *Pace v. City of Des Moines*, 201 F.3d at 1056 (citing *Lambert v. City of Dumas*, 187 F.3d 931, 935 (1999)).

*Id.* at 131, 211 S.W.3d at 489-90.

In its order denying summary judgment, the trial court determined that Appellants were not entitled to qualified immunity, stating:

Regarding the qualified immunity claim, the record, when viewed in a light most favorable to the Plaintiffs, would allow a reasonable finder of fact to conclude that the Defendants engaged in a course of conduct that violated clearly established constitutional rights. *Hudson v. Norris*, 227 F.3d 1047, 1050 (8th Cir. 2000). Furthermore, this court finds that as a matter of law, no reasonable official could have thought that such a course of conduct was lawful. *Id.*

██ Because of the interlocutory nature of the present appeal, we are limited to determining whether the law or right Appellants are alleged to have violated was clearly established at the time of the alleged violations and whether a reasonable person would have known about it. Appellees argue that Appellants illegally entered their home and failed to disclose to Appellees that they were free to refuse consent to search, thereby violating their clearly established constitutional rights. We agree.

A warrantless entry into a private home is presumptively unreasonable under the Fourth Amendment and article 2, section 15, of the Arkansas Constitution. *See Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002); *see also Katz v. United States*, 389 U.S. 347

(1967). The presumption of unreasonableness may be overcome, however, if the law enforcement officer obtained the consent of the homeowner to conduct a warrantless search. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). In *State v. Brown,* 356 Ark. 460, 156 S.W.3d 722 (2004), this court concluded that for a knock-and-talk procedure to be valid, officers who utilize the technique are required to inform the home dweller that he or she has the right to refuse consent to the search.

Accordingly, an individual's right to be informed that he or she may refuse to give consent to search is well established. Having so determined, the sole issue remaining to be determined is whether a reasonable person should have known of the established right. *See Robinson v. Beaumont,* 291 Ark. 477, 725 S.W.2d 839 (1987); *see also Harlow v. Fitzgerald,* 457 U.S. 800 (1982). The answer is yes. Our *Brown* decision was handed down in 2004, well in advance of the alleged violation in this case. We have long recognized that every person is presumed to know the law, whether civil or criminal. *State v. Kelley,* 362 Ark. 636, 210 S.W.3d 93 (2005); *Owens v. State,* 354 Ark. 644, 128 S.W.3d 445 (2003). Accordingly, we cannot say that the trial court erred in denying Appellants' motion for summary judgment on the basis that they were entitled to qualified immunity.

Affirmed.