CITY of FAYETTEVILLE, David Jurgens, Mark Risk,
David Fournet, Andrea Fournet *v.* Jeanny ROMINE

07-1088                                                      284 S.W.3d 10

Supreme Court of Arkansas

Opinion delivered May 1, 2008

[Rehearing denied June 5, 2008.]

*Davis, Wright, Clark, Butt & Carithers, PLC,* by: *Constance G. Clark* and *Don A. Taylor,* for appellant David Jurgens.

*Kit Williams,* Fayetteville City Attorney, for appellant City of Fayetteville.

*The Doss Law Firm,* by: *D. Westbrook Doss* and *Kyle T. Unser,* for appellee.

Tom Glaze, Justice. This case presents an issue of whether a city employee is immune from suit in a civil-rights action. The appellee, Ms. Jeanny Romine, lives at 11 Trenton Boulevard in Fayetteville. Around September of 1998, she began to notice the smell of raw sewage in her back yard. Romine notified the City of Fayetteville about the sewage odor, and subsequent testing by the City revealed that the source of the odor was raw sewage that was seeping downhill from her neighbors' clogged sewer lines and overflowing from a clean-out meter box in Romine's yard. Although, at the time, the City had determined that the sewer lines were private lines, rather than city-owned lines, it nonetheless cleaned out the sewer drains that were causing the problem. In addition, in October of 1998, the City offered to pay Romine $880 for an easement over her property. The easement would have allowed the City to go on to Romine's property, reline the existing sewer pipe, and replace the clean-out box with a manhole for future access.

However, Romine refused the offer of $880 for the easement, believing the offer was not sufficient compensation for her land. After she refused to accept the easement, the City informed her that, because the sewer lines were private, there was nothing else the City could do for her. For the next seven years, sewage

continued to seep over Romine's land from the defective sewer lines, and Romine filed suit against the City of Fayetteville in 2005. In addition, Romine sued her uphill neighbors — David and Andrea Fournet and Mark Risk — and appellant David Jurgens, the Superintendent of the Water and Sewer Division for the City of Fayetteville.

Romine's complaint raised counts of inverse condemnation, outrage, and negligence against the City; outrage, negligence, public nuisance, and trespass against the neighbors; and "toxic assault and battery" against both the City and the neighbors. In addition, Romine brought a civil-rights claim against the City and Jurgens. Specifically, Romine alleged that Jurgens was personally aware of the presence of raw, untreated sewage on her property in 1998 and was aware of the hazards of exposure to raw sewage. Further, she contended that, after she declined the City's offer of $880 for an easement, "Jurgens informed [her] that the offer was withdrawn and that the City of Fayetteville would take no further steps to remedy the sewage problem." Jurgens's actions in "withdrawing" the offer for the proposed easement, Romine claimed, constituted a deprivation of her Fifth Amendment rights to be free from governmental takings of her property without just compensation.

Jurgens answered, contending that any contact he had with Romine was solely in his official capacity as a city employee, and as such, he was immune from suit. On July 23, 2007, Jurgens moved for summary judgment, arguing that, because he was sued in his official capacity, he was protected from suit by Ark. Code Ann. § 21-9-301 (Repl. 2004). He alleged that, because he had acted in good faith in his dealings with Romine, and she had not pled any facts establishing that he acted with malice, he was entitled to summary judgment. After a hearing on September 7, 2007, the Washington County Circuit Court denied Jurgens's summary-judgment motion, finding that there were disputed facts as to whether Jurgens had acted with conscious indifference towards Romine's problems. Jurgens filed his notice of appeal on September 18, 2007.

As a general rule, the denial of a motion for summary judgment is neither reviewable nor appealable. *See Ark. River Educ. Servs. v. Modacure*, 371 Ark. 466, 267 S.W.3d 595 (2007). However, that general rule does not apply where the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to immunity from suit, as the right of

immunity from suit is effectively lost if a case is permitted to go to trial. *See Modacure, supra.* The issue of whether a party is immune from suit is purely a question of law, *see Smith v. Brt,* 363 Ark. 126, 211 S.W.3d 485 (2005), and is reviewed de novo. *Modacure, supra.*

Arkansas affords a measure of immunity from suit to municipal corporations and their employees. Ark. Code Ann. § 21-9-301 (Repl. 2004) provides as follows:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

> (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

This court has consistently held that § 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts. *See Smith v. Brt,* 363 Ark. at 130, 211 S.W.3d at 489; *Deitsch v. Tillery,* 309 Ark. 401, 833 S.W.2d 720 (1992).

In this case, Romine sued Jurgens in his official capacity as Sewer and Water Maintenance Supervisor for the City of Fayetteville.[1] In cases involving the existence of immunity under § 21-9-301, this court has utilized the analysis performed in interpreting the counterpart qualified-immunity statute that applies to state employees, Ark. Code Ann. § 19-10-305 (Repl. 2007); *see Smith v. Brt, supra; City of Farmington v. Smith,* 366 Ark. 473, 237 S.W.3d 1 (2006). Section 19-10-305 provides state employees with qualified immunity from civil liability for non-

---

[1] In her brief, Romine attempts to argue that her suit was actually against Jurgens in his individual capacity, but her assertion is belied by her express representations to the trial court. Her complaint alleged that she sued Jurgens solely in his official capacity, and at the hearing on Jurgens's summary-judgment motion, the circuit court specifically asked Romine whether she was suing him in his official capacity. She replied that she was suing Jurgens in his official capacity, not "privately." The court specifically referenced this exchange in its order, writing that "plaintiff's counsel confirmed on the record that the allegations as against David Jurgens are solely in his official capacity."

malicious acts occurring within the course of their employment. *City of Farmington, supra; Beaulieu v. Gray,* 288 Ark. 395, 705 S.W.2d 880 (1986). In interpreting § 19-10-305, we have traditionally been guided by the analysis adopted by the United States Supreme Court for qualified-immunity claims in federal civil-rights actions. *See Fegans v. Norris,* 351 Ark. 200, 89 S.W.3d 919 (2002) (citing *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)).

In both *Smith v. Brt, supra,* and *City of Farmington v. Smith, supra,* this court has explained the qualified immunity issue as follows:

> Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established, and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Fegans v. Norris, supra* (citing *Baldridge v. Cordes,* 350 Ark. 114, 120-21, 85 S.W.3d 511, 514-15 (2002)). An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Id.* (citing *Harlow v. Fitzgerald,* 451 U.S. 800 (1982)). The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry. *Baldridge v. Cordes, supra.*

> The inquiry outlined above is a restatement of the standard used by this court to evaluate motions for summary judgment on the ground of qualified immunity. *See Baldridge v. Cordes, supra* (citing *Pace v. City of Des Moines,* 201 F.3d 1050 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has emphasized, however, that such a restatement of the standard is incomplete: "Courts deciding questions of qualified immunity must also recognize that 'whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law.' " *Pace v. City of Des Moines,* 201 F.3d at 1056 (citing *Lambert v. City of Dumas,* 187 F.3d 931, 935 (1999)).

*City of Farmington v. Smith,* 366 Ark. at 478-79, 237 S.W.3d at 5-6; *Smith v. Brt,* 363 Ark. at 131, 211 S.W.3d at 489.

Applying these rules, Romine's suit against Jurgens is therefore barred unless she has "asserted a constitutional violation, demonstrated the constitutional right is clearly established, and

raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right." *Smith v. Brt*, 363 Ark. at 131, 211 S.W.3d at 489; *see also Fegans v. Norris, supra; Baldridge v. Cordes, supra.* Because of the interlocutory nature of this type of appeal, our court is limited to determining whether the law or right Jurgens is alleged to have violated was clearly established at the time of the alleged violation, and whether a reasonable person would have known about it. *City of Farmington*, 366 Ark. at 479, 237 S.W.3d at 6.

Romine asserts that she had a constitutional right to be "free from uncompensated governmental takings of her property." Although Jurgens counters that there was no "taking" at all, let alone an uncompensated taking, Romine appears to be contending that the fact that the sewage overflow on her property constituted a form of inverse condemnation. *See Robinson v. City of Ashdown*, 301 Ark. 226, 783 S.W.2d 53 (1990). In *Robinson*, a homeowner sued the City of Ashdown because a city-owned sewer line consistently failed and caused sewage to overflow into the home-owner's home over a period of nine years. This court held that a continuing trespass or nuisance, in the form of constantly over-flowing sewage, could ripen into inverse condemnation. More specifically, the *Robinson* court held that, "[w]hen a municipality acts in a manner which substantially diminishes the value of a landowner's land, and its actions are shown to be intentional, it cannot escape its constitutional obligation to compensate for a taking of property on the basis of its immunity from tort action." *Robinson*, 301 Ark. at 232, 783 S.W.2d at 56-57. Thus, it would appear that Romine has asserted a clearly established constitutional right — i.e., the right to be free from government action that diminishes the value of her land. *See* Ark. Const. art. 2, § 22 ("The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor.").

However, that is not the end of the analysis. Even though Romine has asserted a constitutional violation and demonstrated that the constitutional right was clearly established, she must still raise a genuine issue of fact as to whether the official would have known that his conduct violated that clearly established right. *See City of Farmington*, 366 Ark. at 478, 237 S.W.3d at 5. Romine alleges that Jurgens should have known that "refusing to maintain

a public sewer system because an affected landowner refused to sell her property for less than fair market value violated constitutionally protected rights."

Romine's argument is premised on her assertion that Jurgens failed to maintain a *public* sewer system — i.e., one that was the City's responsibility. However, at the time of Jurgens's sole encounter with Romine in 1998, he determined that the faulty sewer lines had not been installed by the City and that the City did not own the line at any time prior to 1997 or thereafter. Jurgens's determination was based on the facts that: 1) the City had no easement; 2) the line had bends in it; and 3) it did not have a manhole at the end. Jurgens averred that city-owned sewer lines "are laid straight, have manholes on the ends, are six inches in diameter, and have easements or are in rights-of-way." Romine's own expert witness, James Moore, Ph.D., testified that a city engineer looking at Romine's pipes could, reasonably and in good faith, make the determination that the sewer lines were private. Therefore, Jurgens did not, as Romine accuses, "refuse to maintain a public sewer system." Rather, he declined to trespass on private property without the homeowner's consent when the homeowner rejected the City's offer to purchase an easement.

A party opposing a motion for summary judgment must meet proof with proof. *See Gallas v. Alexander*, 371 Ark. 106, 263 S.W.3d 494 (2007); *City of Farmington v. Smith, supra.* In his motion for summary judgment, Jurgens asserted that he met with Romine on one occasion in the fall of 1998 in order to discuss the easement. By deposition testimony, Jurgens further explained that he was there as the project manager for the larger sewer rehabilitation project that Fayetteville was undertaking at the time, and he was the most knowledgeable person about that project. Jurgens stated that he did not "withdraw" the City's offer to purchase an easement, but instead simply advised Romine that, without an easement, the City would later be unable to do the specific repair work it proposed at that time. He explained to her that if she refused the easement, neither he nor any other employee of the City would be able to unclog or provide any other maintenance to the line in the future. Jurgens further stated it was his understanding that, if the City did not have a legal easement over a sewer line, then it could not legally maintain or improve the line, because the City would, in those circumstances, be trespassing on private property.

Romine offered nothing to rebut the factual assertions raised in Jurgens's deposition offered in support of his motion for summary judgment. In her response to his motion, Romine alleged that, "[r]egardless of whether Jurgens withdrew his initial offer, or whether Romine refused an insufficient and ineffective offer, Jurgens still had a duty to prevent sewage from overflowing onto Romine's property." Her argument, however, does not refute Jurgens's factual assertion that, if the sewer lines were not owned by the City, but were instead private lines, the City — and by extension, Jurgens — owed no duty to Romine.

■ Thus, while Romine may have arguably alleged a violation of a clearly established constitutional right, she has failed to raise a genuine issue of fact as to whether Jurgens should have known that his actions as a city employee violated that right. In the absence of evidence showing that Jurgens knew or should have known that he was violating her rights, the circuit court should have found that Jurgens was entitled to immunity and granted his motion for summary judgment on that basis.

The parties raise additional arguments, but it is unnecessary to dwell on them at any length. For instance, Jurgens also cites cases interpreting § 19-10-305 that hold government officials are immune for non-malicious acts occurring within the course of their employment. *See, e.g., Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007) (discussing malice); *Fegans v. Norris, supra; Fuqua v. Flowers*, 341 Ark. 901, 20 S.W.3d 388 (2000). However, those cases were all specifically brought under § 19-10-305 and involved civil-rights actions brought against *State* employees. Section 19-10-305 explicitly provides that "[o]fficers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, *other than malicious acts or omissions*, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305(a) (Repl. 2007) (emphasis added).

■ The instant case, by contrast, is governed by the analysis in *Smith v. Brt* and *City of Farmington v. Smith*, as those cases deal specifically with § 21-9-301, which does not contain the same kind of language about "other than malicious acts or omissions." Therefore, although the parties go into some depth about the question of malice, it is irrelevant.

Also irrelevant — to some degree — is the discussion of whether malice could be inferred by Jurgens's "conscious indifference" to Romine's situation. The circuit court based its ruling, in part, on its belief that there were disputed facts as to whether Jurgens and the City acted with conscious indifference. In her arguments to the trial court and in her appellate brief, Romine urges that malice could be inferred by applying a "conscious indifference" standard. However, that standard was adopted in *Shepherd v. Washington County*, 331 Ark. 480, 962 S.W.2d 779 (1998), a case involving a civil-rights claim brought against the State Police when an inmate under police custody escaped and shot a bystander. This court held that, to infer malice from a state actor's conscious indifference, it must be shown that, "indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff." *Shepherd*, 331 Ark. at 504, 962 S.W.2d at 790.

However, *Shepherd* was strictly limited to its facts, *see id.* at 501, 504-05, 962 S.W.2d at 789, 790, and its reach was severely limited by this court in *Grayson v. Ross*, 369 Ark. 241, 253 S.W.3d 428 (2007), in which this court held that the standard applicable to claims under the Arkansas Civil Rights Act *involving a pretrial detainee* is "deliberate indifference." Accordingly, because both *Shepherd* and *Grayson* present fact situations vastly different from the situation involved in the instant case, Romine's reliance on them is inapposite.

In sum, Jurgens established that he was entitled to qualified immunity under Ark. Code Ann. § 21-9-301, and the circuit court erred in denying his motion for summary judgment. The case is reversed and remanded for entry of an order consistent with this opinion.