2013 Ark. 222

Robert SULLIVAN, Mayor; City of McRae, Arkansas; and Wayland Bradford, Benny Ward, Mike Smith, and Twyla Turner, Appellants

v.

Mary CONEY, Appellee.

No. CV–12–1094.

Supreme Court of Arkansas.

May 23, 2013.

M. Keith Wren, for appellant.

Robert A. Newcomb, for appellee.

CLIFF HOOFMAN, Justice.

In this interlocutory appeal, appellant, Mayor Robert "Bob" Sullivan of the City of McRae, Arkansas, appeals from the circuit court's order denying his motion for summary judgment on the basis of qualified immunity.[1] This case is presented to us following our grant of a petition for review from a decision of the Arkansas Court of Appeals. *Sullivan v. Coney*, 2012 Ark. App. 687, 2012 WL 6045919. Thus, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1-2(e) and 2-4 (2012). We reverse and remand the circuit court's decision.

Appellee Mary Coney was hired as the chief of police for the City of McRae in September 2008. Coney's job duties included code enforcement, animal control, and acting as court bailiff. Mayor Sullivan terminated Coney on February 13, 2009, for allegedly falsifying fire-department records and for insubordination. A special city-council meeting was held on February 24, 2009, to discuss Coney's termination, and the council voted not to overturn the Mayor's decision to terminate her.

Coney filed a complaint on March 27, 2009, against the City of McRae; Robert "Bob" Sullivan, individually and as Mayor of McRae; and Wayland Bradford, Benny Ward, Mike Smith, and Twyla Turner, all of whom were McRae aldermen. Coney claimed in her complaint that she had been previously employed not only as chief of police but also as the code enforcement officer for the City and that this position could be terminated only for cause. She denied that the Mayor had just cause to terminate her employment and asserted that she was terminated only because she had reported to the city attorney that the Mayor had committed misconduct by ordering her to issue a criminal citation to a citizen who had not committed any crimi-

---

1. Although there were several defendants named in the underlying suit, Sullivan, indi- vidually, is the sole appellant involved in this interlocutory appeal.

nal act. Coney alleged (1) that the defendants failed to comply with the provisions of the Arkansas Freedom of Information Act because they did not give sufficient notice of the special city-council meeting; (2) that her due-process rights under the Arkansas Constitution were violated because she was not granted notice and a hearing on the charges against her; (3) that Sullivan's termination of her employment violated her rights under the Arkansas Whistle–Blower Act; (4) that her termination from her positions of chief of police and code enforcement officer without just cause violated her rights under the Arkansas Civil Rights Act (ACRA); and (5) that she was entitled to COBRA benefits. Coney sought compensatory and punitive damages from the defendants, as well as reinstatement.

In their answer, the defendants denied the allegations in the complaint and affirmatively asserted that they were entitled to statutory immunity. The defendants also filed a motion for summary judgment on each of the claims and asserted that they were entitled to qualified immunity because Coney had no property interest in her employment as an at-will employee and was not owed any procedural due process with regard to her termination. In support of their motion, the defendants filed a statement of uncontested material facts based on discovery responses by Coney.

In the portions of this statement that are relevant to this appeal, Coney admitted that a city ordinance establishing the position of "Building Official" required that an appointment be made by the Mayor and that she was never appointed by the Mayor to be the building official. While she claimed that she was given the position (which Coney refers to as the code enforcement officer) by the city council in August or September 2008, she admitted that the minutes from the August and September 2008 council meetings did not reflect this appointment. Coney further agreed that she had served as secretary for the volunteer fire department, where she was responsible for entering run reports into the computer indicating which firemen appeared at the scene, after which she would give the reports to another employee who paid the firefighters based on these reports. She admitted that the Mayor began to suspect that she was altering the run reports to reflect that she was attending runs that she actually did not attend, although she denied that she had done this. Coney also admitted that she was told by the Mayor to arrest a man for violating a zoning ordinance by operating a cabinet shop out of his residence and that she had refused to do this because she believed that the zoning ordinance did not provide for criminal sanctions. She agreed that she instead reported the Mayor's directions to the city attorney, who told Coney that the matter would be addressed at the next city-council meeting, although Coney was fired before the next meeting was held. Coney admitted that the penalty section of the zoning ordinance at issue was correctly set out by the defendants, and it provided that a person who violates the ordinance shall be guilty of a misdemeanor and liable for a fine of not more than one hundred dollars.

A hearing was held on the motion for summary judgment on August 22, 2011, although the issue of qualified immunity was not discussed. At the conclusion of the hearing, the circuit court indicated that there were unresolved material issues of fact that prevented summary judgment from being granted. When Sullivan's counsel indicated his intent to file an interlocutory appeal on the qualified-immunity issue, the circuit court noted that the issue had been briefed by the parties but not argued. Although counsel then attempted

to address the issue, the circuit court stated that it had already ruled based on what was presented at the hearing. The order denying the summary-judgment motion was entered on September 16, 2011, and it states with regard to the immunity issue that "Mayor Sullivan's motion for summary judgment based on qualified immunity was not argued during the hearing and is hereby denied." The order noted that the other individual defendants were sued in their official capacity only. Sullivan filed a timely notice of appeal from the circuit court's order denying him qualified immunity.

The court of appeals reversed and remanded for the circuit court to address the merits of the qualified-immunity issue. *Sullivan v. Coney,* 2012 Ark. App. 687, 2012 WL 6045919. We granted Sullivan's petition for review, which argued that the court of appeals had erred by not addressing the issue when it was ruled on by the circuit court and was fully briefed by both parties on appeal. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Osborn v. Bryant,* 2009 Ark. 358, 324 S.W.3d 687.

Generally, the denial of a motion for summary judgment is neither reviewable nor appealable; however, that general rule does not apply where the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to immunity from suit, as the right of immunity is effectively lost if the case is allowed to proceed to trial. *Gentry v. Robinson,* 2009 Ark. 634, 361 S.W.3d 788. The issue of whether a party is immune from suit is purely a question of law and is reviewed de novo. *Id.*

Although there were numerous grounds raised by the defendants in their motion for summary judgment in this case,

our current review is limited to the question of whether Sullivan, individually, is entitled to immunity from the present suit. *City of Farmington v. Smith,* 366 Ark. 473, 237 S.W.3d 1 (2006). Coney's complaint alleged liability against Sullivan both in his official capacity and individually; however, this court has recognized that a suit against a city official in his or her official capacity is not a suit against that person but is instead a suit against that official's office. *Id.; Smith v. Brt,* 363 Ark. 126, 211 S.W.3d 485 (2005).

Arkansas Code Annotated section 21–9–301 (Supp.2011), which governs qualified immunity, states as follows:

(a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

We have consistently held that section 21–9–301 provides city employees with immunity from civil liability for negligent, but not intentional, acts. *City of Farmington v. Smith, supra.*

The analysis used by this court in determining whether summary judgment on the ground of qualified immunity is appropriate is derived from the standard used for qualified-immunity claims in federal civil-rights actions. *Smith v. Brt, supra.* Under this analysis, a motion for summary judgment based on qualified immunity is precluded only when the plaintiff has (1) asserted a statutory or constitu-

tional violation, (2) demonstrated that the statutory or constitutional right is clearly established, and (3) raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Id.; Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). Therefore, "[a]n official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge." *Smith*, 363 Ark. at 131, 211 S.W.3d at 489. We have noted that this objective reasonable-person standard is a legal inquiry and that whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law. *Id.*

The circuit court in this case declined to reach the merits of the qualified-immunity claim because it was not argued at the hearing, even though the parties had raised the issue in the pleadings and in the summary-judgment motion and responses. There is no requirement, however, in Ark. R. Civ. P. 56, which governs motions for summary judgment, that the parties orally argue a claim raised in the motion. Despite the court's refusal to address the merits of the qualified-immunity claim, the issue was fully briefed below by both parties, and there was an express ruling by the circuit court in its order denying summary judgment. Thus, Coney's assertion that the issue has been waived by Sullivan is without merit. Because the parties have fully briefed the issue below and on appeal and because the question of whether summary judgment is appropriate on the ground of qualified immunity is purely one of law, this court may decide this issue in our de novo review of the circuit court's ruling.

In deciding whether Sullivan is entitled to qualified immunity, we must first determine what statutory or constitutional viola-

tions Coney has alleged in her complaint. She alleged five claims, two of which were constitutional in nature: her claim that her due-process rights under the Arkansas Constitution were violated when she was not provided with adequate notice of the charges against her and an opportunity to refute them prior to her termination as chief of police, and her claim that her rights under the ACRA were violated by her termination without just cause. She also alleged that Sullivan violated the Arkansas Whistle–Blower Act, Ark.Code Ann. § 21–1–601 *et seq.*

With respect to the due-process claim, Sullivan responds that Coney was an at-will employee and that she therefore had no properly interest in her position as Chief of Police. Although Coney argued that Ark.Code Ann. § 14–42–110 (Repl. 1998) granted her the right to have a hearing before the city council to determine whether the council should override the Mayor's decision to terminate her, Sullivan correctly notes that this section does not confer any rights to a terminated employee but instead sets forth the procedure by which the Mayor can appoint and remove department heads. In *Sykes v. City of Gentry*, 114 F.3d 829 (8th Cir. 1997), the court found that the 1995 enactment of section 14–42–110, which expressly grants the Mayor the power to appoint and remove all department heads, eliminated the property interest that a chief of police had under prior versions of the statutes. Thus, the court held that there was no violation of due process when Sykes, as the former chief of police, was terminated by the Mayor without cause. *Id.* The court explained that when a legislature alters or eliminates a previously conferred properly interest in state employment, "the legislative process itself provides citizens with the process they are due." *Id.* at 830. Here, as in *Sykes*, the Mayor's decision to

terminate Coney from her position as chief of police, regardless of whether he had just cause, did not violate her due-process rights under the Arkansas Constitution because she was an at-will employee. *See also Robinson v. Langdon*, 333 Ark. 662, 970 S.W.2d 292 (1998) (state employee had no property interest in his employment where he was an at-will employee).

■ Similarly, for the reasons stated above, Mayor Sullivan's termination of Coney as chief of police, even if without cause, did not violate her constitutional rights under the ACRA. Coney's primary contention under the ACRA, however, was based on her alleged termination from her position of code enforcement officer, or "Building Official." Both parties agree that McRae City Ordinance 50, which establishes the position of building official, requires that the building official "shall be appointed by the Mayor" and "shall not be removed from office except for cause after full opportunity has been given to be heard" on the charges. Thus, as opposed to the position of chief of police, the building official would be entitled to procedural due process pursuant to this ordinance, which gives the employee a property interest in the position. However, apart from the bare allegations of Coney in her pleadings, she offered no proof that she was, in fact, appointed to or terminated from this position. She admitted that Mayor Sullivan did not appoint her to the position, as is required by the ordinance, and she also offered no evidence to support her claim that she was appointed by the city council. The defendants attached as exhibits to their summary-judgment motion the minutes from the city-council meetings during which Coney alleged that she was appointed, and she admits that there is no indication of her appointment in these minutes.

Coney failed to meet proof with proof in opposing the motion for summary judgment, and she has therefore failed to establish a constitutional violation from either her alleged termination from the position of building official or from her termination as chief of police. *City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008) (where the party opposing the summary-judgment motion did not meet proof with proof, this court held that the appellee failed to raise a genuine issue of fact as to whether the city employee was entitled to qualified immunity and reversed the trial court's denial of summary judgment).

■ Coney also argued that her claim that Mayor Sullivan violated the Arkansas Whistle–Blower Act demonstrated that her termination was wrongful and against public policy. Coney contends that a termination in violation of public policy is an exception to the at-will employment doctrine and that Sullivan is not entitled to qualified immunity for this claim.

Under the Arkansas Whistle–Blower Act, a public employer is prohibited from taking adverse action against an employee who communicates in good faith to an appropriate authority government waste or the violation of a rule, law, or regulation. Ark.Code Ann. § 21–1–603(a) (Supp.2011). Sullivan argues that what Coney reported to the city attorney was not a violation of law and that he therefore could not have known that he was violating the Act by terminating her.

Under our qualified-immunity analysis, we agree that even if Coney has asserted a violation of a clearly established right under the Act, she has failed to raise a genuine issue of fact as to whether Sullivan would have known that his conduct violated that clearly established right. Coney alleged that Sullivan told her to arrest someone who was not committing a crime. However, the zoning ordinance at issue did provide for a criminal penalty, and Coney

further admitted that she was aware that the individual was violating the ordinance. Coney has therefore failed to demonstrate that what she reported to the city attorney was a violation of law. Sullivan stated that he terminated Coney's employment as police chief because of insubordination and falsification of records. Coney has not shown that Sullivan would have reasonably believed that he was violating her rights under the Whistle–Blower Act by terminating her under the circumstances in this case. Thus, Sullivan was also entitled to qualified immunity on this claim.

Because the circuit court erred in not granting Sullivan qualified immunity on the claims brought by Coney, we reverse and remand for further proceedings consistent with this⌊₁₁opinion.

Reversed and remanded.