

# SUPREME COURT OF ARKANSAS

No. CV-14-10

| | |
|---|---|
| CHARLES SMITH, BETTY MAINS, JAMES SCOGGINS, BRYAN HALL, Each Individually and in their Official Capacity, as employees of the DEPARTMENT OF HUMAN SERVICES, DEPARTMENT OF BEHAVIORAL SCIENCES serving the Arkansas State Hospital | Opinion Delivered December 11, 2014 |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV2011-0402-6] |
| APPELLANTS | |
| | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| V. | |
| GLORIA DANIEL | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART; AND REMANDED. |
| APPELLEE | |

**JOSEPHINE LINKER HART, Associate Justice**

This interlocutory appeal arises from a lawsuit filed pursuant to the Arkansas Whistle-Blower Act and state and federal civil rights claims. Charles Smith, in his official capacity as the Administrator of the Arkansas State Hospital (State Hospital) and Betty Mains in her individual capacity appeal from the denial of their motion for summary judgment. The circuit court found that Gloria Daniel's claim for retaliation was not barred by sovereign immunity and that the remaining defendants in the lawsuit are not entitled to qualified immunity. On appeal, appellants argue: (1) the Circuit Court erred in denying the appellants' motion for summary judgment based on sovereign immunity; and (2) the Circuit Court erred in denying the appellants' motion for summary judgment based on

1

qualified/statutory immunity grounds. We affirm in part; reverse in part; and remand.

Daniel was fired from her position as a registered nurse at the State Hospital thirteen months after she reported to Charles Smith, the Director of Behavioral Health Services and others that a patient's death was attributable to abuse or neglect and the failure of the hospital to have present basic life-saving equipment. The purported reason for terminating Daniel was that she violated the seclusion/restraint policies for a patient and for making "unprofessional" comments.

Daniel filed suit, asserting claims under the Arkansas Whistle-Blower Act, the Arkansas Civil Rights Act, 42 U.S.C. § 1983, and 42 U.S.C. § 1981.[1] In the body of her third amended complaint, in the paragraph styled "PARTIES AND JURISDICTION," Daniel recited the following:

> Plaintiff is a black female resident and citizen of the State of Arkansas, who formerly worked for the Department of Human Services AND DEPARTMENT OF BEHAVIORAL SCIENCES at the Arkansas State Hospital, an instrumentality of the State of Arkansas. Charles Smith is the Administrator of the Arkansas State Hospital, who is sued in his official capacity only under the Whistleblower's Act [sic]. Charles Smith, James Scoggins, Bryan Hall, and Betty Mains were employees who participated in the decision to terminate the Plaintiff because she is black and female, and each is sued in their individual capacity. This is an action also brought for termination in violation of the ACRA and the Arkansas Whistleblower's Act. But this action brought under the ACRA, 42 USC 1983 and 42USC 1981 only against the individual Defendants. Accordingly, this Court has subject matter jurisdiction. Venue is proper. To the extent not otherwise dismissed by the Court, the previous Complaints are incorporated by reference.

Appellants' summary judgment motion recited that it was seeking relief for "Charles

---

[1] The section 1981 claim was dismissed in the order appealed from and Daniel did not file a cross-appeal.

SLIP OPINION

Smith, in his official capacity, and Betty Mains, in her official and individual capacities.[2]"

It alleged the following:

1. The Third Amended Complaint fails to state sufficient facts as required by the Arkansas Rules of Civil Procedure to allow the lawsuit to continue.

2. The Whistle-Blower Act does not provide for the claim against Smith or Mains in any capacity.

3. Any Whistle-Blower Act claim against Mains is time-barred

4. There are no pending individual claims against Smith.

5. The official capacity Arkansas Civil Rights Act claims are barred by sovereign immunity.

6. ACRA does not provide for discrimination claims against state actors.

7. The ACRA retaliation claims are barred by statutory immunity.

8. There was no causal connection between Daniel's "report" to Smith and her termination.

9. Defendants are protected by sovereign and statutory immunity from Daniel's discrimination and retaliation claims.

In its December 31, 2013 order, the circuit court dismissed the Whistle-Blower claim against Maims and all individual-capacity claims against Smith. It denied summary judgment for the the Whistle-Blower claim against Smith in his official capacity, denied qualified immunity to any defendant, and, after acknowledging that it had considered all of the other arguments submitted by the Defendants denied summary judgment as to each argument.

On appeal, appellants first argue that the circuit court erred in denying the appellants'

---

[2]Smith was the Administrator of the Arkansas State Hospital; Mains was the Assistant Administrator.

SLIP OPINION

motion for summary judgment based on sovereign immunity. They acknowledge that a suit against a state official in his or her official capacity is "not a suit against that person, but rather is a suit against that official's office." Appellants further note that the Arkansas Whistle-Blower Act contemplates suits only against a "public employer," not an individual.[3] While appellants concede that the Arkansas Whistle-Blower Act "implies a waiver of immunity as to 'an agency, department, or institution of state government,'" it nonetheless asserts that it does not waive immunity in this case because "public employer" does not

---

[3]The Arkansas Whistle-Blower Act in pertinent part defines "public employer" as:

(A) An agency, department, board, commission, division, office, bureau, council, authority, or other instrumentality of the State of Arkansas, including the offices of the various Arkansas elected constitutional officers and the General Assembly and its agencies, bureaus, and divisions;

(B) A state-supported college, university, technical college, community college, or other institution of higher education or department, division, or agency of a state institution of higher education;

(C) The Supreme Court, the Court of Appeals, the Administrative Office of the Courts, the circuit courts, and prosecuting attorneys' offices;

(D) An office, department, commission, council, agency, board, bureau, committee, corporation, or other instrumentality of a county government or a municipality or a district court, a county subordinate service district, a municipally owned utility, or a regional or joint governing body of one (1) or more counties or municipalities; or

(E) A public school district, school, or an office or department of a public school district in Arkansas;

Ark. Code Ann. § 21-1-602(5) (Repl. 2004).



include individuals.

In an interlocutory appeal from a denial of summary judgment based on sovereign immunity, two standards of review can apply. *Ark. Lottery Comm'n v. Alpha Mktg.*, 2013 Ark. 232, 428 S.W.3d 415. Where the circuit court makes no "substantive interpretations of law," but instead makes its decision based on whether the pleadings state "sufficient facts for [an] exception to sovereign immunity," we apply the abuse-of-discretion standard of review. *Id.* In those instances, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Id.* However, where the issue is whether a statute provides a waiver of sovereign immunity, our review is de novo, giving no deference to the circuit court's interpretation of the statute. *Weiss v. McLemore*, 371 Ark. 538, 268 S.W.3d 897 (2007). The case before us implicates both standards of review.

The defense of sovereign immunity originates from the Arkansas Constitution, which provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. art. V, § 20. We have recognized three ways in which a claim of sovereign immunity may be waived: (1) where the State is the moving party seeking specific relief; (2) where an act of the legislature has created a specific waiver of sovereign immunity; and (3) where the state agency is acting illegally or if a state agency officer refuses to do a purely ministerial action required by statute. *Ark. Dept. of Cmty. Corr. v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731. A statutory waiver of sovereign immunity may be express or implied. *Id.*

We agree with appellants that when the legislature authorized a cause of action against a "public employer" in the Arkansas Whistle-Blower Act, it expressly waived sovereign immunity. We likewise agree that a suit against a public official in his or her official capacity is essentially a suit against that official's agency. *See, e.g.*, *Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007); *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002). We have held that official-capacity suits generally represent a way of pleading a cause of action against the entity of which the officer is an agent. *Simons*, *supra*. While it is true that the Arkansas Whistle Blower Act does not directly state that a suit against a director of a state entity is a suit against the public employer, in interpreting a statue, we presume that the legislature is familiar with our decisions. *Books-A-Million, Inc. v. Ark. Painting & Specialties Co.*, 340 Ark. 467, 10 S.W.3d 857 (2000). Accordingly, we hold that the suit against Smith in his official capacity as chief executive officer of the Arkansas State Hospital was in effect a suit against a public employer.[4] We note as well that in the style of

---

[4]The dissent cites a federal district court case, *Crosby v. Pulaski Technical College Bd. of Trustees*, No. 4:06cv 01003SWW, 2007 WL 2750672 (E.D. Ark. Sept. 18, 2007) as authority for its contention that a suit against a "public employer" under the Arkansas Whistle Blower Act is not proper where suit is brought against a department head in his or her official capacity. However, the dissent's reliance on *Crosby* is misplaced. There Crosby filed an employment discrimination suit against the Board of Trustees (the Board) of Pulaski Technical College (PTC); Dan Bakke, the President of PTC in his official and individual capacities; and Robert Blackiston, the Chief of Police of PTC in his official and individual capacities. The institution itself was not made a defendant. The complaint alleged that the Board, Blackiston, and Bakke retaliated against him in violation of Title VII and the Arkansas Whistle Blower Act and "deprived him of rights secured by the Constitution and laws of the United States of America, in violation of 42 U.S.C. § 1983. In disposing of Crosby's claims under the Arkansas Whistle Blower Act, the district court stated:

Defendants do not assert that Crosby's claims against the PTC under the Arkansas

her complaint, Daniel did name "the Department of Behavioral Sciences serving the Arkansas State Hospital." Moreover, in full compliance with Rule 9 of the Arkansas Rules of Civil Procedure, Daniel fully pleaded her employment relationship with a public employer—the "Department of Human Services AND DEPARTMENT OF BEHAVIORAL SCIENCES at the Arkansas State Hospital, an instrumentality of the State

---

Whistle-Blower Act are barred under the Eleventh Amendment. However, the Court finds it necessary to address this important jurisdictional issue sua sponte.

Although the Arkansas Whistle-Blower Act provides for citizen suits in state court against a "public employer," *see* Ark. Code Ann. § 21-1-604, the State's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity. A state must specify an intent to subject itself to federal court jurisdiction in order to waive Eleventh Amendment immunity, *see Faibisch v. University of Minnesota*, 304 F.3d 797, 800 (8th Cir. 2002), and after careful review, the Court finds no such provision with respect to the Arkansas Whistle-Blower Act.

Furthermore, the Court agrees with Defendants that Blackiston and Bakke are not proper defendants under the Whistle-Blower Act. The Act defines "public employer" as "[a]n agency, department, board, commission, division, office, bureau, counsel, authority, or other instrumentality of the State of Arkansas …" Ark. Code Ann. § 21-1-602(5)(A). The definition of "public employer" does not include individuals. In sum, the Court finds that Crosby fails to state a claim for relief under the Arkansas Whistle-Blower Act and that this claim must be dismissed without prejudice.

Accordingly, the federal district court found that under the Arkansas Whistle Blower Act suits against the public employer—brought by naming PTC's Board, President, and Chief of Police—were barred under the Eleventh Amendment, and suits under the Act against those persons in their individual capacities was not authorized by the statute. Obviously, in the case before us, a suit against Smith in his official capacity under the Arkansas Whistle Blower Act in *state court* was not barred by the Eleventh Amendment prohibition against a state being sued in federal court. Furthermore, it is obvious that the federal district court recognized, as do we, that PTC's Board, President, and Chief of Police in their *official capacities* would have been proper defendants as public employers but for the state's immunity under the Eleventh Amendment.

7

of Arkansas," as well as Smith in his official capacity. Appellants make no argument why the circuit court, or this court on appeal, should not consider those entities as named plaintiffs and, as such, Daniel's public employer. We affirm the circuit court on this point.

We are mindful that appellants' summary-judgment motion asserted that "the official capacity Arkansas Civil Rights Act claims are barred by sovereign immunity" and that "Defendants are protected by sovereign and statutory immunity from Daniel's discrimination and retaliation claims." We are also mindful that the circuit court makes no specific finding with regard to these assertions. However, we believe that it was appropriate for the circuit court to summarily dispose of these assertions as the "other arguments," for without an express ruling on an a legitimate issue of sovereign immunity, the State would be precluded from bringing this appeal. *Arkansas Lottery Com'n v. Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400. As we noted previously, the third amended complaint asserted no official capacity claims against any of the defendants under the Arkansas Civil Rights Act. Although, on appeal, appellants correctly note that the State has not waived sovereign immunity for claims brought under the Arkansas Civil Rights Act,[5] this statement is of no moment because, again, it is obvious from the previously quoted PARTIES AND JURISDICTION paragraph in the third amended complaint that the only official capacity claim was asserted under the Arkansas Whistle-Blower Act. The other defendants were sued

---

[5]§ 16-123-104. Sovereign immunity not waived

Nothing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas.

only in their individual capacity.[6]

For their second point, appellants argue that the circuit court erred in denying their motion for summary judgment based on qualified/statutory immunity grounds. They contend that they "acted in good faith in performing their duties;" consequently, they are immune from this lawsuit because they are protected by statutory immunity pursuant to Arkansas Code Annotated section 19-10-305. Appellants further assert that Daniel has not alleged "any specific act "by Smith or Mains[7]" that constitutes malice.

Daniel argues that the circuit court properly denied the appellants' summary-judgment motion because there are material issues of fact with regard to whether the individuals named in her complaint were entitled to qualified immunity. She notes that there is a spoliation issue associated with a video tape that she believes would exonerate her.

---

[6]We are not saying that every part of Daniel's complaint is likewise a model of clarity. We are aware that the complaint states the following under <u>COUNT II</u> where she asserts a cause of action for retaliation under the Arkansas Civil Rights Act, Arkansas Code Annotated section 16-123-108(a) and under the Arkansas Whistle-Blower Act, Arkansas Code Annotated section 21-1-603. Sandwiched between paragraph 35 where Daniel asserts that "Smith and the individual Defendants are sued individually" for the civil rights claims, and paragraph 38 where Daniel makes her Whistle-Blower claim is the somewhat enigmatic paragraph 37. That paragraph states:

> Plaintiff sues all Defendants both in their official capacities [sic] for injunctive relief. Plaintiff reported the abuse and neglect. Plaintiff was fired, designated non-rehirable and denied the grievance process, because of her report and because she was black.

Where there is some ambiguity in a pleading, it is not proper to construe it in such a way as to create a barrier for a litigant to try the case, particularly where the litigant has demonstrated elsewhere in the pleading a clear understanding of the capacity in which the the defendants are being sued.

[7]Individual claims against Smith were dismissed by the circuit court in the order that the appellants appeal from. There is no cross-appeal. We will therefore not consider the arguments that the appellants make specifically with regard to qualified immunity for Smith.

Further, she notes that she denied the conduct of which she was accused. Furthermore, she contends that she raised an issue of material fact regarding whether her discharge was pretextual. In support of the latter, she alleges a long history of racial discrimination at the State Hospital. She specifically pointed to the fact that non-African Americans were not terminated after an independent report found them to be responsible for the death of a patient, the incident that gave rise to her cause of action under the Arkansas Whistle-Blower Act. She likewise alleged disparate treatment with regard to similarly situated employees of a different gender. She again specifically cited an independent report concerning a restraint situation in which male nurses engaged in conduct that was more egregious than the conduct that resulted in her termination, i.e., simply closing the door of an agitated patient's room to allow the patient to sleep.

Summary judgment is appropriate when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id*.

In the case before us, all of the factual allegations made by Daniel suggests that racial

and gender animus may exist at the Arkansas State Hospital. However, the Arkansas Civil Rights Act claims against Mains are directed against her in her *individual* capacity. Nowhere can we find in Daniel's complaint specific factual allegations against Mains that assert that she personally acted with malice. Likewise, we can find no proof in the materials that she submitted to oppose the appellants' summary judgment motion that indicate that she personally acted with malice. Accordingly, we hold that the circuit court erred when it denied the appellant's summary-judgment motion to dismiss the individual-capacity claims.

Affirmed in part; reversed and dismissed in part; and remanded.

HANNAH, C.J., and DANIELSON, J., concur in the disposition of the claim under the Arkansas Whistle-Blower Act and dissent from the balance of the opinion.

CORBIN, J., concurs in part and dissents in part.

BAKER, GOODSON, and HOOFMAN, JJ., concur in part and dissent in part.

**DONALD L. CORBIN, Justice, concurring in part and dissenting in part.** I concur with the majority's disposition of the claim under the Arkansas Whistle-blower Act, but I respectfully dissent as to the remaining points on appeal. Appellants chose to bring forth an abbreviated record of the circuit court proceedings, and I simply cannot ascertain from that record whether Appellants' remaining arguments have merit.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** By misinterpreting the General Assembly's acts, the majority has judicially created a waiver of *any* and *all* sovereign immunity for the State under the Arkansas Whistle-Blower Act (AWBA). The majority also errs by failing to address an entire substantive claim on appeal, the denial of Smith's motion for summary judgment based on sovereign immunity on the

11

Arkansas Civil Rights Act (ACRA) claims. Finally, the majority's analysis blurs the standard adopted by this court for the review of claims of qualified or statutory immunity. I concur in part and dissent in part.

First, the majority errs in affirming the circuit court's denial of Smith's motion for summary judgment based on sovereign immunity as to the AWBA claim. The majority erroneously concludes that the AWBA creates a blanket broad-sweeping waiver of sovereign immunity for all claims made pursuant to the Act. Specifically, the majority holds that because suing a state employee in his official capacity means that you have in effect sued the State, it also means that by suing a state employee in his official capacity you have sued a "public employer" under the AWBA. The majority holds:

> We agree with appellants that when the legislature authorized a cause of action against a "public employer" in the Arkansas Whistle-Blower Act, it expressly waived sovereign immunity. We likewise agree that a suit against a public official in his or her official capacity is essentially a suit against that official's agency. *See*, e.g., *Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007); *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002). We have held that official-capacity suits generally represent a way of pleading a cause of action against the entity of which the officer is an agent. Simons, supra. While it is true that the Arkansas Whistle Blower Act does not directly state that a suit against a director of a state entity is a suit against the public employer, in interpreting a statue, we presume that the legislature is familiar with our decisions. *Books-A-Million, Inc. v. Ark. Painting & Specialties Co.*, 340 Ark. 467, 10 S.W.3d 857 (2000). Accordingly, we hold that the suit against Smith in his official capacity as chief executive officer of the Arkansas State Hospital was in effect a suit against a public employer.

Based on this analysis, the majority has judicially created an express waiver of immunity for the State under the AWBA for any and all actions brought under the Act. Further, the majority supports this interpretation by stating, "We note as well that in the style of her complaint, Daniel did name "the Department of Behavioral Sciences serving the

12

SLIP OPINION

Arkansas State Hospital." This statement is incorrect. The style of Daniel's third amended complaint is as follows:

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

GLORIA DANIEL                                                                PLAINTIFF

VS.                               NO. CASE NO. 60CV2011-0402-6

CHARLES SMITH, BETTY MAINS,
JAMES SCOGGINS, BRYAN HALL, Each individually
and in their official capacity, as employee of the
DEPARTMENT OF HUMAN SERVICES,
DEPARTMENT OF BEHAVIORAL SCIENCES,
serving the Arkansas State Hospital                          DEFENDANTS

Daniel clearly did not name the"public employer," the State, or its agencies; rather she named only individual employees in their official capacities.

Rather than affirm, I would reverse and remand the case based on the following analysis. Public employers are traditionally entitled to sovereign immunity from suit. In limited circumstances, the Arkansas General Assembly has created a statutory exception to sovereign immunity. Ark. Code Ann. § 21-1-604 (Repl. 2004), "Civil action for violation," provides a limited waiver of immunity and allows for suit against a public employer under this statute, which provides in pertinent part: "A public employee who alleges a violation of this subchapter may bring a civil action for appropriate injunctive relief or actual damages, or both." Accordingly, pursuant to the AWBA, immunity is waived and suit against a "public employer" is available.

The definition of "public employer" in the AWBA, is found in Ark. Code Ann. § 21-1-602 (Supp. 2013). However, in order to properly review Ark. Code Ann. § 21-1-602,

13

the court must look to the surrounding applicable statutes under the AWBA.

Daniel asserts that Smith, in his official capacity as the director of ASH, retaliated against her in violation of Ark. Code Ann. § 21-1-603 (Repl. 2004), under the AWBA, "Retaliation prohibited," which provides in pertinent part:

(a)(1) A *public employer* shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority:

(A) The existence of waste of public funds, property, or manpower, including federal funds, property, or manpower administered or controlled by a public employer; or

(B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.

*Id.* (emphasis added).

Therefore, the narrow issue before us is whether Smith is a "public employer" pursuant to the AWBA. Ark. Code Ann. § 21-1-602, "Definitions," provides in pertinent part:

(5) "Public employer" means any of the following:

(A) An agency, department, board, commission, division, office, bureau, council, authority, or other instrumentality of the State of Arkansas, including the offices of the various Arkansas elected constitutional officers and the General Assembly and its agencies, bureaus, and divisions;

(B) A state-supported college, university, technical college, community college, or other institution of higher education or department, division, or agency of a state institution of higher education;

(C) The Supreme Court, the Court of Appeals, the Administrative Office of the Courts, the circuit courts, and prosecuting attorneys' offices;

(D) An office, department, commission, council, agency, board, bureau,

14

committee, corporation, or other instrumentality of a county government or a municipality or a district court, a county subordinate service district, a municipally owned utility, or a regional or joint governing body of one (1) or more counties or municipalities; or

(E) A public school district, school, or an office or department of a public school district in Arkansas.

The plain reading of Ark. Code Ann. § 21-1-602(5)(A)–(E) in its entirety does not include individuals. In fact, the statutory definition does not contain any language referring to a person or an individual. Therefore, a plain reading of this statute demonstrates that a "public employer" does not contemplate an individual. When a statute is clear, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Lambert v. LQ Mgmt., L.L.C.*, 2013 Ark. 114, 426 S.W.3d 437. Thus, an unambiguous statute presents no occasion to resort to other means of interpretation as "[i]t is not allowable to interpret what has no need of interpretation." *City of Little Rock v. Ark. Corp. Comm'n*, 209 Ark. 18, 21, 189 S.W.2d 382, 384 (1945). Here, the language employed by the General Assembly is so plain and unambiguous that judicial construction is limited to what was said. Based on the plain language of Ark. Code Ann. § 21-1-602(5)(A), the waiver of immunity from suit against a "public employer" under the AWBA is limited to a "public employer" and does not include a waiver of immunity for individuals. "Generally, the rules of statutory construction do not permit this court to read into a statute words that are not there. *McMillan v. Live Nation Entm't, Inc.*, 2012 Ark. 166, at 6, 401 S.W.3d 473, 476–77." *Clinical Study Ctrs., Inc. v. Boellner*, 2012 Ark. 266, at 8, 411 S.W.3d 695, 700.

Additionally, while this court has not had the occasion to interpret the term "public employer" under Ark. Code Ann. § 21-1-602(5)(A), the Federal District Court for the Eastern District of Arkansas has in *Crosby v. Pulaski Technical College Board of Trustees*, No. 4:06CV01003SWW, 2007 WL 2750672 (E.D. Ark. Sept. 18, 2007). In *Crosby*, Crosby sued the Pulaski Technical College Board of Trustees ("PTC") and Dan Bakke, the President of PTC in his official and individual capacities; and Robert Blackiston, the Chief of Police of PTC in his official and individual capacities, asserting among other things a violation of the AWBA. The federal district court held as follows

> [T]he Court agrees with Defendants that Blackiston and Bakke are not proper defendants under the Whistle-Blower Act. The Act defines "public employer" as "[a]n agency, department, board, commission, division, office, bureau, counsel, authority, or other instrumentality of the State of Arkansas. . . ." Ark. Code Ann. § 21-1-602(5)(A). The definition of "public employer" does not include individuals. In sum, the Court finds that Crosby fails to state a claim for relief under the Arkansas Whistle-Blower Act and that this claim must be dismissed without prejudice.

*Id.* at *5; *see Greer v. City of Warren*, Civ. No. 1:10-CV-01065, 2012 WL 1014658 at *3 (W.D. Ark. March 23, 2012).[1]

Further, in reviewing the entire subchapter, this interpretation is supported by Ark. Code Ann. § 21-1-604, "Civil Liability," subsection (e)(1) provides in pertinent part: "A public employer shall have an affirmative defense to a civil action brought by a public employee under this subchapter." Also, Ark. Code Ann. § 21-1-605 (Repl. 2004),

---

[1]The majority is correct that the whistle-blower claims in *Crosby* were disposed of on Eleventh Amendment grounds. Nonetheless, the district court's interpretation that our statutory definition of "public employer" does not include an individual supports my position.

"Remedies," subsection (5) provides, "The payment by the public employer of reasonable court costs and attorney's fees." Both statutes specifically identify the defendant to the civil action as the "public employer" and do not reference an individual.

Thus, the majority bypasses the General Assembly's unambiguous language and judicially creates a waiver of immunity that is simply not expressed or implied in the AWBA. Because this court does not have the authority to expand the waiver of immunity set out in the AWBA, I would hold that the circuit court erred when it denied Smith's claim of entitlement to sovereign immunity on the AWBA claim.

Next, the majority fails to specifically address Smith's claim on appeal asserting that the circuit court erred in denying Smith's motion for summary judgment on the ACRA claims against Smith and Mains in their official capacities based on sovereign immunity. The majority states that the ACRA official-capacity claims are not before this court when it states:

> As we noted previously, the third amended complaint asserted no official capacity claims against any of the defendants under the Arkansas Civil Rights Act. Although, on appeal, appellants correctly note that the State has not waived sovereign immunity for claims brought under the Arkansas Civil Rights Act, this statement is of no moment because, again, it is obvious from the previously quoted PARTIES AND JURISDICTION paragraph in the third amended complaint that the only official capacity claim was asserted under the Arkansas Whistle-Blower Act. The other defendants were sued only in their individual capacity.

To make matters worse, immediately after stating that the claims were not made, the majority states the opposite, that the ACRA claims were made, by stating:

> We are not saying that every part of Daniel's complaint is likewise a model of clarity. We are aware that the complaint states the following under COUNT II where she asserts a cause of action for retaliation under the Arkansas Civil Rights Act, Arkansas

17

Code Annotated section 16-123-108(a) and under the Arkansas Whistle-Blower Act, Arkansas Code Annotated section 21-1-603. Sandwiched between paragraph 35 where Daniel asserts that "Smith and the individual Defendants are sued individually" for the civil rights claims, and paragraph 38 where Daniel makes her Whistle-Blower claim is the somewhat enigmatic paragraph 37. That paragraph states:

> Plaintiff sues all Defendants both in their official capacities [sic] for injunctive relief. Plaintiff reported the abuse and neglect. Plaintiff was fired, designated non-rehirable and denied the grievance process, because of her report and because she was black.

> Where there is some ambiguity in a pleading, it is not proper to construe it in such a way as to create a barrier for a litigant to try the case, particularly where the litigant has demonstrated elsewhere in the pleading a clear understanding of the capacity in which the defendants are being sued.

(Emphasis added).

Ironically, the majority recognizes that (1) the ACRA official capacity claims were made, "sandwiched between paragraphs 35 and 38, in the enigmatic paragraph 37", (2) recognizes that this court should not create a barrier for litigants[2] but then, (3) precludes the litigant here from making his claim on appeal. Stated differently, the majority states that the claims were not made, but then states the claims were actually made, and the majority goes on to preclude Smith from litigating his claim after it stated that this court should not construe the pleadings to create a barrier for a litigant. Such an analysis is nonsensical.

---

[2]Arkansas Rule of Civil Procedure 8(a) provides that a pleading "shall contain (1) a statement in ordinary and concise language of facts showing that the court has jurisdiction of the claim and is the proper venue and that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader considers himself entitled." *See also Allied Chem. Corp. v. Van Buren Sch. Dist.*, 264 Ark. 810, 575 S.W.2d 445 (1979) ("Pleadings are to be liberally construed and are sufficient if they advise a defendant of his obligations and allege a breach of them.).

Further, the "PARTIES AND JURISDICTION" section simply does not provide that "the only official capacity claim . . . asserted [was] under the Arkansas Whistle-Blower Act. The other defendants were sued only in their individual capacity," as the majority contends. This is wrong. The majority fails to recognize that the PARTIES AND JURISDICTION section states in its entirety:

> Plaintiff is a black female resident and citizen of the State of Arkansas, who, formerly worked for the Department of Human Services AND DEPARTMENT OF BEHAVIORAL SCIENCES at the Arkansas State Hospital, an instrumentality of the State of Arkansas. Charles Smith is the Administrator of the Arkansas State Hospital, who is sued in his official capacity only under the Whistleblower's Act. Charles Smith . . . [and] Betty Mains were employees who participated in the decision to terminate the Plaintiff because she is black and female, and each is sued in their individual capacity. This is an action also brought for termination in violation of the ACRA and the Arkansas Whistleblower's Act. But this action is brought under the ACRA, 42 USC 1983 and 42 USC 1981 only against the individual Defendants. Accordingly, this court has subject matter jurisdiction. Venue is proper. To the extent not otherwise dismissed by the Court, the previous Complaints are incorporated by reference.

As the majority recognizes, I agree that this language is not a "model of clarity," but the language asserts both individual and official capacity claims. The style of the complaint, the PARTIES AND JURISDICTION section and the complaint itself all state that defendants are sued in their official capacities.

In sum, the majority's analysis is fatally flawed. We cannot recognize that the official-capacity ACRA claims were made but then hold that that "is of no moment." Simply put, the record does not support the majority's analysis on these claims. Rather, a careful review of the entire record demonstrates otherwise. The following supports that the ACRA official-capacity claims are before this court and must be addressed: (1) Daniel's

19

third amended complaint, (2) Smith's motion for summary judgment and brief in support,

(3) the circuit court's hearing and written order, (4) Smith's brief before this court on

appeal, and (5) Daniel's brief before this court on appeal.

First, in Daniel's third amended complaint, in the style of her complaint she has sued:

CHARLES SMITH, BETTY MAINS, JAMES SCOGGINS, BRYAN HALL, Each individually *and in their official capacity*, as employee of the DEPARTMENT OF HUMAN SERVICES, DEPARTMENT OF BEHAVIORAL SCIENCES, serving the Arkansas State Hospital.

Additionally, in paragraph 31 of her complaint, Daniel asserted:

Each Defendant has deprived [Daniel] of a federally protected property right without due process in violation of the 5th and 14th Amendments and *the ACRA*, as well as discriminated against her on the basis of her race and gender and denied her Equal Protection by terminating her under circumstances similarly situated whites or males were not.

Further, as discussed above, in paragraph 37 of her complaint she asserted:

[Daniel] sues all Defendants both in their *official capacities* for injunctive relief. [Daniel] reported the abuse and neglect. Plaintiff was fired, designated non-rehireable and denied the grievance process, because of her report and because she was black.

Second, the ACRA official-capacity claims were presented in Smith's motion for

summary judgment and brief in support. In paragraph 5 of Smith's motion, he states "The

official capacity Arkansas Civil Rights Act claims are barred by sovereign immunity." Also,

in his brief in support of his motion for summary judgment, in "IX. Defendants Are

Immune From Plaintiff's Claims," Smith asserted:

If allowed to proceed, Daniels['] Third Amended Complaint ostensibly purports to raise race and gender discrimination claims under both state and federal theories. Defendants are immune from the claims. Defendants are immune in their *official capacities* under Article 5, § 20 of the Arkansas Constitution.

Further, subsection (A) of Smith's brief in support entitled, "*Official Capacity Claims –
Article 5, Section 20*," specifically addresses the ACRA official-capacity claims on pages
27–28.

Third, the record from the circuit court's December 23, 2013 hearing on the motion
for summary judgment demonstrates that the ACRA official-capacity claims were
presented, summary judgment was denied, and the claims remain in the case. In granting
in part and denying in part Smith's motion for summary judgment, the following colloquy
occurred:

| | |
|---|---|
| CIRCUIT COURT: | All right . . . And then everything else, [Attorney General] – – and if you want to put in there the arguments with respect to sovereign immunity, . . . I'm denying all the rest of it, okay? All right. And I need you to get me an order so that we'll have that memorialized. |
| . . . . | |
| ATTORNEY GENERAL: | Since you're denying our motion for summary judgment on qualified immunity statutory immunity grounds, I intend to take an interlocutory appeal. |
| CIRCUIT COURT: | That's why I told you that you could put it in the order, since you've raised those things – – you all have the right to make your record. |
| | Now, I'm just telling you, I'm not ruling on any – – that doesn't require me to rule on that. But you get me whatever it is that you want. I'm not so certain that that creates an automatic stay. |
| . . . . | |
| PLAINTIFF'S COUNSEL: | If it does, what I'm going to do – – . . . if this thing is stayed, then I'm going to dismiss the individual claims, whatever the basis for an interlocutory appeal is because |

21

I want to go to trial and get this case over.

ATTORNEY GENERAL:    May I – – point of clarification.

. . . .

CIRCUIT COURT:    I'm denying the motion in all other respects.

. . . .

ATTORNEY GENERAL:    So that I'm clear, the *only things* you granted are there are no *individual* claims against Charles Smith.

CIRCUIT COURT:    There was no service [on the *individual claims*] and so that's dismissed with prejudice.

ATTORNEY GENERAL:    And no "whistle blower" claim against Betty Ma[i]nes?

CIRCUIT COURT:    That is correct.

ATTORNEY GENERAL:    Okay.

CIRCUIT COURT:    It was time barred.

Accordingly, the circuit court ruled that the ACRA claims survived Smith's motion for summary judgment and remained in the case. The circuit court denied "all the rest" of the grounds and the ACRA official-capacity claims remained. This same ruling is memorialized in the circuit court's written order, which the majority quotes in its opinion, "[T]he court has considered all of the other arguments for summary judgment submitted by the Defendants and finds that summary judgment should be denied as to each argument."

Fourth, Smith's brief on appeal demonstrates that the ACRA official-capacity claims were presented, denied summary judgment on, and remain in the case. Smith has clearly

raised the ACRA official-capacity claims on appeal. In his brief on pages 2–3, Smith

presents the ACRA official-capacity claims on appeal:

> Daniel's claims against Smith and Mains in their *official capacities* are barred by express constitutional declaration. Article 5, section 20, of the Arkansas Constitution provides: "The State of Arkansas shall never be made a defendant in any of her courts."
>
> . . . .
>
> [T]he Arkansas Civil Rights Act ("ACRA") specifically states that it does not waive the immunity of the state of Arkansas. Ark. Code Ann. § 16-123-104. . . . Thus, Daniel's claims of retaliation, race, and gender discrimination against Defendants in their *official capacities* under ACRA are claims against the State of Arkansas, and the State of Arkansas has not consented to suit. As a result, the claims are barred.

Additionally, on page 16, Smith states as follows:

> *The ACRA official capacity claims are barred by sovereign immunity.*

Fifth and finally, in her response brief to Smith, Daniel generally responds to Smith's

argument on sovereign immunity and does not assert that the ACRA official-capacity claims

are not before the court.

Accordingly, based on the record before the court discussed above, I would address

this claim based on the following analysis.

Ark. Code Ann. § 16-123-104, "Sovereign immunity not waived," of the ACRA

provides: "Nothing in this subchapter shall be construed to waive the sovereign immunity

of the State of Arkansas." In *Simons*, 369 Ark. 447, 450–51, 255 S.W.3d 838, 840–41, we

addressed sovereign immunity and its application to public employees in their official

capacities and the ACRA. In that case, Simons, an Arkansas State Trooper, was sued in his

official capacity, including an ACRA claim. Simons responded with a motion to dismiss,

asserting that he was entitled to sovereign immunity. The circuit court denied his motion to dismiss; we reversed and remanded and held that Simons was entitled to immunity. In our discussion of the doctrine of sovereign immunity we explained:

> Sovereign immunity is jurisdictional immunity from suit. This defense arises from Article 5, Section 20 of the Arkansas Constitution, which provides: "The State of Arkansas shall never be made a defendant in any of her courts." This court has consistently interpreted this constitutional provision as a general prohibition against awards of money damages in lawsuits against the state and its institutions. The doctrine of sovereign immunity is rigid and may only be waived in limited circumstances.
>
> With regard to actions under the Arkansas Civil Rights Act, the General Assembly specifically reserved the state's right to immunity from suit. Section 16-123-104, provides that "[n]othing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas." As a result, this court has previously rejected arguments that there was an intent to waive the state's sovereign immunity within the confines of the civil rights act.
>
> We agree with Simons that Marshall's action against him in his official capacity as an Arkansas State Trooper is tantamount to a suit against the state. This court has held that "[a] suit against a state official in his or her official capacity is not a suit against that person, but rather is a suit against that official's office." We have further elaborated that official-capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent.

*Id*. at 450–451, 255 S.W.3d at 840–41 (internal citations omitted) (quoting *State v. Goss*, 344 Ark. 523, 526, 42 S.W.3d 440, 442–43 (2001)).

Here, Smith and Mains, like Simons, have been sued in their official capacities for claims under the ACRA and are also entitled to sovereign immunity. As we explained in *Simons* above, the doctrine of sovereign immunity is rigid and can be waived only in limited circumstances. "This court has recognized three ways in which a claim of sovereign immunity may be surmounted: (1) where the State is the moving party seeking specific

relief; (2) where an act of the legislature has created a specific waiver of sovereign immunity; and (3) where the state agency is acting illegally or if a state agency officer refuses to do a purely ministerial action required by statute." *Ark. Game & Fish Comm'n v. Eddings*, 2011 Ark. 47, at 6, 378 S.W.3d 694, 698 (internal citations omitted). These exceptions to immunity are not applicable to the case before us.

Based on the record before the court, art. 5, section 20, of the Arkansas Constitution, and *Simons*, Smith and Mains are entitled to sovereign immunity. Pursuant to our standard of review, I would hold that the circuit court erred in denying Smith's motion for summary judgment on the ACRA official-capacity claims based on sovereign immunity.

Next, I concur in the majority's result on Smith's final argument that the circuit court erred when it denied Smith's motion for summary judgment regarding the ACRA claim against Mains in her personal capacity. However, I write separately because the majority fails to apply the correct analysis adopted and applied in cases such as these by this court. Rather, the majority applies the traditional summary-judgment standard which is not the standard to be applied in cases such as Smith's. The majority holds that

> [Daniel] notes that there is a spoliation issue associated with a video tape that she believes would exonerate her. Further, she notes that she denied the conduct of which she was accused. Furthermore, she contends that she raised an issue of material fact regarding whether her discharge was pretextual. In support of the latter, she alleges a long history of racial discrimination at the State Hospital. She specifically pointed to the fact that non-African Americans were not terminated after an independent report found them to be responsible for the death of a patient, the incident that gave rise to her cause of action under the Arkansas Whistle-Blower Act. She likewise alleged disparate treatment with regard to similarly situated employees of a different gender. She again specifically cited an independent report concerning a restraint situation in which male nurses engaged in conduct that was more egregious than the conduct that resulted in her termination, i.e., simply closing the

door of an agitated patient's room to allow the patient to sleep.

Summary judgment is appropriate when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id*.

This analysis is incorrect. Although the parties both cite to the correct standard, the majority fails to apply that standard, but instead applies the traditional summary judgment standard and disposes of the claim. This is simply wrong. Rather, this court must look to the specific allegations made against Mains that entitle Daniel to relief, but the majority has blurred the standard for summary judgment required to be applied to these cases. *See Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005); *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002).

In deciding whether Mains is entitled to statutory or qualified immunity, this court must first determine what statutory or constitutional violations Daniel has alleged. In her third amended complaint, Daniel claimed that Mains violated her rights under the ACRA by terminating Daniel without cause and further alleged that she was discriminated against based on race and gender. Specifically, Daniel sued "[Mains] individually for First Amendment retaliation, harassment, coercion, and violation of Plaintiff's right to remonstrate under the Arkansas Civil Rights Act as allowed by Ark. Code Ann. § 16-123-105 and Ark. Code Ann. § 16-123-108(a) and (b)."

Under Ark. Code Ann. § 21-9-301 (Repl. 2004), the State and its agencies enjoy immunity from suit except to the extent it may be covered by liability insurance, or acts as a self-insured for certain amounts as provided by statute. *Smith*, 363 Ark. 126, 211 S.W.3d 485. "Despite this grant of statutory immunity, a state officer or employee may still be liable in a personal capacity. This court stated that suits against officers and employees alleged to be malicious are suits against the officers or employees personally, and they are liable to the extent anyone would be liable under tort law." *Sullivan v. Coney*, 2013 Ark. 222, at 6, 427 S.W.3d 682, 685. In *Smith*, we explained our analysis for qualified or statutory immunity:

> In interpreting section 19-10-305, we have traditionally been guided by the analysis adopted by the Supreme Court for qualified-immunity claims in federal civil-rights actions. *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002); *Rainey v. Hartness*, [339 Ark. 293, 5 S.W.3d 410 (1999)]. Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Fegans v. Norris*, *supra* (citing *Baldridge v. Cordes*, 350 Ark. 114, 120–21, 85 S.W.3d 511, 514–15 (2002)). An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry. *Baldridge v. Cordes*, *supra*.
>
> The inquiry outlined above is a restatement of the standard used by this court to evaluate motions for summary judgment on the ground of qualified immunity. *See Baldridge v. Cordes*, *supra* (citing *Pace v. City of Des Moines*, 201 F.3d 1050 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has emphasized, however, that such a restatement of the standard is incomplete: "Courts deciding questions of qualified immunity must also recognize that 'whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law'." *Pace v. City of Des Moines*, 201 F.3d at 1056 (citing *Lambert v. City of Dumas*, 187 F.3d 931, 935 (1999)).

*Smith*, 363 Ark. at 130–31, 211 S.W.3d at 488–89.

Therefore, "[a]n official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. We have noted that this objective reasonable-person standard is a legal inquiry and that whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law." *Sullivan*, 2013 Ark. 222, at 6, 427 S.W.3d at 685 (internal citations omitted).

In applying the analysis adopted by this court to this case, Daniel has alleged that her protected activity, the report to Smith in 2009, her First Amendment rights and her race and gender, were the bases for her termination in violation of the ACRA. However, Daniel has failed to raise a genuine issue of fact as to whether Mains would have known that her termination of Daniel violated her rights. In addition, Daniel does not allege any facts connecting Mains to an ACRA violation. The record demonstrates that Mains terminated Daniel thirteen months after the report, over a year after an alleged violation of the protected right had occurred. Instead, Daniel asserts only the conclusory allegations: "Defendants acted with malice, were willful, and wanton. Accordingly, [Daniel] seeks punitive damages against [Mains], in [her] individual capacity." Daniel also makes only conclusory allegations that she was terminated because of her race and gender: "Each defendant . . . discriminated against her on the basis of her race and gender . . . by terminating her under circumstances similarly situated whites or males were not. [Daniel] was terminated because she is black and a female." These conclusory allegations are not sufficient to create a question of fact that will survive a motion for summary judgment based on qualified or statutory immunity. *See*



*Sullivan, supra; see also City of Fayetteville, supra.*

In sum, Daniel has failed to demonstrate, and the record fails to demonstrate that Mains could have reasonably known that her termination of Daniel's employment would violate Daniel's rights. Accordingly, the circuit court erred in denying immunity to Mains.

Because Smith and Mains are entitled to immunity on the AWBA and ACRA claims, I would hold that the circuit court erred in denying Smith's motion for summary judgment.

Therefore, I respectfully concur only as to the result reached by the majority concerning the ACRA claims against Mains in her individual capacity and respectfully dissent from the remainder of the majority opinion.

GOODSON, J. and HOOFMAN, J., join.

*Dustin McDaniel*, Att'y Gen., by: *Gary L. Sullivan*, Ass't Att'y Gen., for appellants.

*Sutter & Graham, P.L.L.C.*, by: *Luther Oneal Sutter* and *Lucien Gillham*, for appellee.